# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WASHINGTON TRUCKING ASSOCIATIONS, a Washington nonprofit corporation; EAGLE SYSTEMS, INC., a Washington corporation, GORDON TRUCKING, INC., a Washington corporation; HANEY TRUCK LINE, INC., a Washington corporation; JASPER TRUCKING, INC., a Washington corporation; PSFL LEASING, INC., a Washington corporation; and SYSTEM-TWT TRANSPORTATION d/b/a SYSTEM-TWT, a Washington limited liability company, | No. 47681-9-II |
| Appellants, | |
| v. | |
| THE STATE OF WASHINGTON, EMPLOYMENT SECURITY DEPARTMENT; PAUL TRAUSE, individually and in his official capacity as the former Commissioner of the Employment Security Department, and JANE DOE TRAUSE, husband and wife and the marital community composed thereof; BILL WARD, individually and in his official capacity, and JANE DOE WARD, husband and wife and the marital community composed thereof; LAEL BYINGTON, individually and in his official capacity, and JANE DOE BYINGTON, husband and wife and the marital community composed thereof; JOY STEWART, a single individual, individually and in her official capacity; MELISSA HARTUNG, a single individual, individually and in her official capacity; ALICIA SWANGWAN, a single individual, individually and in her official capacity; | PUBLISHED OPINION |
| Respondents. | |

MAXA, J. — The Washington Trucking Association (WTA) and six Washington based trucking carriers (the Carriers) appeal the trial court's dismissal under CR 12(b)(6) or CR 12(c) of their lawsuit against the Washington Employment Security Department (ESD) and various ESD employees.  The lawsuit arose from a series of audits of the Carriers (and other WTA members) that ESD conducted, after which ESD determined that "owner/operators" of trucking equipment leased by the Carriers were the Carriers' employees.  This determination resulted in additional unemployment tax assessments.  WTA and the Carriers allege that ESD targeted the trucking industry and conducted rigged audits in which ESD required the auditors find an employment relationship and liability for unemployment taxes.  WTA and the Carriers asserted claims (1) against ESD employees under 42 U.S.C. § 1983 for violation of the Carriers' due process and other constitutional rights based on the failure to properly conduct the audits; and (2) against ESD for tortious interference with the Carriers' contracts and business expectancies based on ESD's decision to classify owner/operators as employees.[1]

We hold that (1) WTA does not have individual standing to assert § 1983 or tortious interference claims and does not have associational standing to assert tortious interference claims, but whether WTA has associational standing to assert a § 1983 claim cannot be determined based on the complaint allegations; (2) WTA's and the Carriers' § 1983 claim is barred by the principle of comity to the extent that they seek damages in the amount of the tax

---

[1] WTA and the Carriers also asserted claims for bad faith, conversion, and unjust enrichment. However, on review they confine their argument to the dismissal of their § 1983 and tortious interference with contract and business expectancy claims.  Therefore, we do not address these claims.

assessments, but not to the extent that they seek damages unrelated to the assessment amounts; (3) RCW 50.32.180 and the doctrine of exhaustion of administrative remedies bar the Carriers' claim of tortious interference with a contract or business expectancy to the extent that claim is based on an allegation that the reclassification of owner/operators as employees was incorrect, but not to the extent that the claim is based on allegations that ESD had an improper motive or used improper means in making that reclassification; and (4) the Carriers' complaint allegations were sufficient to state a claim for tortious interference with a contract or business expectancy.

Accordingly, we affirm in part and reverse in part, and remand to the trial court for proceedings consistent with this opinion.

## FACTS

*The Parties*

WTA is a trade association that seeks to protect and promote the interests of the Washington trucking industry. WTA's mission is to promote a favorable and profitable operating environment for the industry's members, which includes protecting the industry's use of owner/operators and ensuring that members are taxed only as allowed by Washington law.

The six plaintiff trucking carriers are Eagle Systems, Inc.; Gordon Trucking, Inc.; Haney Truck Line, Inc.; Jasper Trucking, Inc.; PSFL Leasing, Inc.; and System-TWT Transport. All of the Carriers have been assessed state unemployment taxes based on their lease contracts with owner/operators of trucking equipment. The Carriers are members of WTA.

ESD is a state agency that administers Washington's unemployment compensation system under the authority granted to its commissioner by the Employment Security Act (ESA),

Title 50 RCW.  ESD employees named as defendants are (1) Paul Trause, former commissioner; (2) Bill Ward, director of unemployment insurance audits and collections; (3) Lael Byington, former manager of the tax investigations and specialized collections unit; (4) Joy Stewart, auditor; (5) Melissa Hartung, auditor; and (6) Alicia Swangwan, auditor.

*Carriers and Owner/Operators*

The Carriers are for-hire general freight carriers that operate in a number of states.  The Carriers meet fluctuating demand for their services by contracting with owner/operators to lease trucking equipment from them on an as-needed basis.

Owner/operators own their own trucking equipment (the truck tractor and sometimes also the trailer).  General freight carriers contract with the owner/operator to lease their trucking equipment.  The contracts also include truck operating services, which can be provided either by the owner/operator personally or by employees hired by the owner/operator.  Federal regulations dictate many terms of these contracts.

*Procedural History*

In 2010, ESD audited and assessed additional unemployment taxes on three of the Carriers: Gordon Trucking, Haney Truck Line, and System-TWT Transport.  Each carrier timely appealed to the Office of Administrative Hearings pursuant to RCW 50.32.030.  The appeals were assigned to an administrative law judge (ALJ).

The three carriers filed a consolidated motion for summary judgment before the ALJ. They argued for dismissal of the ESD tax assessments on various grounds, including federal preemption and the violation of auditing standards.  In March 2011, the ALJ denied the motion

for summary judgment, finding that there were genuine disputes of material fact regarding the relationships between carriers and owner/operators and the conduct of the auditors.

The ALJ then remanded System-TWT Transport's assessment to ESD for reconsideration and new audits. The order instructed ESD to review whether owner/operators who contracted with the carrier were "in employment" under RCW 50.04.100, if so whether the services the owner/operators provided actually took place in Washington, and whether the assessment was properly limited to services provided and not equipment. The ALJ's remand order also instructed the parties to engage in settlement negotiations after the new audits were performed. The ALJ remanded the assessments of Eagle Systems, Gordon Trucking, Haney Truck Line, Jasper Trucking, and PSFL Leasing under the same terms as the System-TWT Transport remand.

*Alleged Settlement Agreement*

After the ALJ's remand order, the Carriers and ESD engaged in settlement negotiations. The Carriers believed a settlement had been reached, but ESD disagreed.

In 2013 the Carriers obtained an ex parte show cause order from the Pierce County Superior Court directing ESD to show cause why the court should not enforce the settlement agreement. After a show cause hearing, the superior court concluded that a settlement had been reached and entered an order enforcing the agreement. The terms of the settlement included that the appeals be dismissed from the administrative hearing and that "[n]o further exhaustion of administrative remedies shall be required in order to permit the judicial appeals by the respective Carriers." Clerk's Papers (CP) at 341.

ESD appealed the superior court's order enforcing the settlement agreement. This court reversed the order, holding that the superior court lacked personal jurisdiction because the show cause procedure was inappropriate to start an action. *Eagle Sys., Inc. v. State Emp't Sec. Dept.*, 181 Wn. App. 455, 457, 326 P.3d 764 (2014). This court did not address whether or not a valid settlement agreement had been reached. *Id.* at 461.

*Damages Lawsuit against ESD*

In May 2013, WTA and the Carriers filed suit against ESD and certain named ESD employees. In February 2014, WTA and the Carriers filed a second amended complaint. WTA's and the Carriers' allegations in that complaint are summarized as follows:

1.  Pursuant to the ESD commissioner's authority under RCW 50.12.010, ESD audits employers to determine whether the employer owes additional sums for unemployment taxes and may assess the employer for any sums owed, including interest and penalties.

2.  All ESD auditors are required to comply with the Generally Accepted Auditing Standards. They also must comply with ESD's own tax audit manual and status manual, which explain how to determine if an owner/operator is an employee or independent contractor.

3.  The Carriers and other WTA members traditionally have not paid unemployment taxes for the owner/operators with whom they contract, because they view the owner/operators as independent contractors rather than employees. The Carriers based that view on previous representations from ESD that if the owner/operators brought substantial equipment to the relationship, unemployment taxes need not be paid.

4.  Without statutory or regulatory authority, Trause, Ward, and Byington directed ESD to establish an underground economy unit designed to collect additional taxes from certain industries. Stewart, who lacked a background in auditing, urged ESD to target the trucking industry as part of the underground economy initiative.

5.  ESD required Stewart's underground economy audits to net 98 percent to 100 percent changes to payroll and to discover a minimum amount of taxes and new employees per quarter.

6.  Stewart conducted the majority of the audits at issue in this case. Hartung and Swangwan each conducted one audit. The audit outcomes were predetermined, because the auditors were required to find an employment relationship between motor carriers and owner/operators

resulting in additional unemployment tax liability. All three auditors determined that owner/operators were employees of the Carriers and assessed the Carriers additional unemployment taxes for the owner/operators.

7. The auditors assessed unemployment tax liability based on total amounts paid to the owner/operators. They made no effort to segregate the value of the owner/operator's equipment from the value of driving services when calculating tax liability.

8. Trause, Ward, and Byington directed the audits of the Carriers, knowing that the audits violated Department standards. Trause, Ward, and Byington directed ESD and the Attorney General's Office to defend the audits with predetermined outcomes.

WTA and the Carriers asserted a § 1983 claim against Trause, Ward, Byington, Stewart, Hartung, and Swangwan in their personal capacities for their part in the audits and assessments. WTA and the Carriers alleged that (1) Stewart's, Hartung's and Swangwan's failure to properly conduct audits violated the Carriers' due process rights; (2) Trause's and Ward's failure to ensure that the audits were properly conducted pursuant to the general accounting standards and ESD's standards violated the Carriers' due process rights; (3) Byington's insertion of a quota system into Stewart's performance expectations deprived Stewart of impartiality and objectivity and violated the Carriers' due process rights; (4) the named ESD employees' determination that owner/operators were the Carriers' employees created a relationship that neither the owner/operators nor the Carriers wanted with terms that neither was free to negotiate, which violated the Carriers' freedom to contract; (5) the named ESD employees' actions were arbitrary or capricious and violated the Carriers' rights to substantive due process and equal protection; (6) federal law preempted the named ESD employees' application of the ESA, which violated WTA's and the Carriers' due process rights; and (7) ESD's improper assessments indirectly infringed on the Carriers' right under the commerce clause to engage in interstate commerce free

7

of discriminatory taxes. WTA and the Carriers requested an award of damages and punitive

damages under § 1983.

WTA and the Carriers also asserted a claim against ESD for tortious interference with

contracts and business expectancies based on ESD's reclassification of owner/operators as

employees subject to unemployment taxes. WTA and the Carriers alleged that ESD's actions

inflicted severe damages on them. They requested an award of damages under this claim.

*Trial Court Dismissal*

ESD filed a motion to dismiss WTA's and the Carriers' claims under CR 12(b)(6) and/or

CR 12(c). The trial court granted the motion. In its oral ruling, the trial court stated that

(1) WTA lacked standing regarding the § 1983 claim, (2) the plaintiffs could not challenge

specific unemployment tax assessments without first exhausting administrative remedies, and

(3) all the elements of the tortious interference claim were not met as a matter of law. Because

the trial court ruled that the § 1983 claim required exhaustion, it did not address the merits of that

claim.

WTA and the Carriers appeal.

ANALYSIS

A.      THE ADMINISTRATIVE PROCESS

Chapter 50.32 RCW outlines the process for appealing unemployment taxes. After ESD

issues an order and notice of assessment pursuant to RCW 50.24.070, the employer has 30 days

to file an initial appeal to the "appeal tribunal." RCW 50.32.030. The filing of an appeal stays

the accrual of interest and penalties on the disputed assessment until a final decision is made.

RCW 50.32.030. The "appeal tribunal" is a disinterested ALJ from the Office of Administrative Hearings. RCW 50.32.010. After a hearing, the ALJ must provide a ruling in which the assessment may be affirmed, modified, or set aside. RCW 50.32.050.

Either party may appeal the ALJ's decision by making a petition for review to the ESD commissioner within 30 days of the ALJ's decision. RCW 50.32.070. After reviewing the proceedings that took place before the ALJ, the commissioner issues a decision in writing that affirms, modifies, or sets aside the ALJ's decision. RCW 50.32.080. Alternatively, the commissioner can order further proceedings before the ALJ. RCW 50.32.080.

RCW 50.32.120 grants either party the right to appeal the commissioner's ruling pursuant to RCW 34.05.570, the Administrative Procedure Act (APA)[2] provision for judicial review. Judicial review permits various challenges to the agency's order. RCW 34.05.570(3)(a)-(i). For example, the employer may challenge the commissioner's decision on grounds that the decision violated constitutional provisions or erroneously interpreted or applied the law. RCW 34.05.570(3)(a), (d).

RCW 50.32.180 provides that the remedies provided in the ESA for determining the "justness or correctness of assessments . . . shall be exclusive and no court shall entertain any action to enjoin an assessment or require a refund or adjustment except in accordance with the provisions of this title."

---

[2] Ch. 34.05 RCW.

B.     STANDARD OF REVIEW

ESD moved for dismissal under both CR 12(b)(6) and CR 12(c), and the trial court did not specify the basis for its dismissal order.  Under CR 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  CR 12(c) allows parties to move for judgment on the pleadings.

Under either subsection, we review the dismissal de novo.  *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 208 & n.4, 304 P.3d 914 (2013).  Dismissal under CR 12(b)(6) or CR 12(c) is appropriate only if the court concludes beyond a doubt that the plaintiff cannot prove any set of facts that would justify recovery.  *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014) (CR 12(b)(6) dismissal); *Ent v. Wash. State Criminal Justice Training Comm'n*, 174 Wn. App. 615, 622, 301 P.3d 468 (2013) (CR 12(c) dismissal).  On review, we presume that the allegations in the plaintiff's complaint are true, and we also may consider any hypothetical facts the plaintiff offers.  *FutureSelect*, 180 Wn.2d at 962; *Ent*, 174 Wn. App. at 622.[3]

C.     WTA'S STANDING TO ASSERT § 1983 AND TORTIOUS INTERFERENCE CLAIMS

WTA argues that the trial court erred in dismissing WTA's § 1983 claim based on lack of standing to assert that claim.  In addition, standing potentially is an issue regarding the tortious

---

[3] Generally, submission of evidence not contained in the original complaint converts a CR 12(b)(6) motion to a summary judgment motion.  *Bavand v. OneWest Bank, FSB*, 176 Wn. App. 475, 485, 309 P.3d 636 (2013).  Here, it appears that the parties submitted additional materials not contained in the complaint.  However, neither party argues that the summary judgment standard should be applied here.

interference with a contract or business expectancy claim.[4]  We hold that WTA does not have

individual standing to assert § 1983 or tortious interference claims and does not have

associational standing to assert a tortious interference claim, but that whether WTA has

associational standing to assert a § 1983 claim cannot be determined based on the complaint

allegations.

       1.   Individual Standing

To establish individual standing, a party must satisfy both prongs of a two-pronged test.

*Branson v. Port of Seattle*, 152 Wn.2d 862, 875-76, 101 P.3d 67 (2004).  First, the party's claim

must fall within the "zone of interests" protected by the statute or constitutional provision at

issue.  *Id.* at 875.  Second, the party must show some "personal injury fairly traceable to the

challenged conduct and likely to be redressed by the requested relief."  *High Tide Seafoods v.*

*State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986).  In other words, the party must have "suffered

from an injury in fact, economic or otherwise."  *Branson*, 152 Wn.2d at 876.

WTA argues that it has standing on its own behalf because it suffered injury in the form

of attorney fees and costs that it incurred regarding the Carriers' administrative appeals and

litigation over the assessments.  WTA and the Carriers alleged in their second amended

complaint that they had incurred costs and attorney fees in "defending the assessments."

CP 224.  For purposes of CR 12(b)(6) and CR 12(c), this allegation satisfies the second prong of

the individual standing test.

---

[4] It is unclear whether WTA argues that it has standing to assert claims for tortious interference with contractual relationships and business expectancies on behalf of the Carriers.  We address this standing issue in case WTA does make this argument.

But WTA cannot satisfy the first prong of the individual standing test – that its claims fall within the zone of interests protected by § 1983 or the tort of tortious interference with a contract or business expectancy. There is no allegation that ESD employees violated WTA's constitutional rights. ESD never audited or assessed unemployment taxes against WTA. WTA incurred attorney fees only because of alleged violations of the constitutional rights of its members. In the examination of individual standing, those rights are not necessarily the rights of the organization. Similarly, WTA does not allege that ESD interfered with its own contracts or business expectancies.

Accordingly, we hold that WTA does not have individual standing to pursue a § 1983 claim or a tortious interference with a contract or business expectancy claim.

2.      Associational Standing

An association that otherwise does not have individual standing, may have standing on behalf of its members. Associational standing is established when (1) the members of the organization otherwise would have standing to sue in their own right, (2) the interests that the organization seeks to protect are germane to its purpose, and (3) neither the claim nor the relief requires the participation of the organization's individual members. *Riverview Cmty. Grp. v. Spencer & Livingston*, 181 Wn.2d 888, 894, 337 P.3d 1076 (2014). The first two prongs are constitutional, but the third prong is judicially created for administrative convenience and

efficiency. *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 215, 45 P.3d 186 (2002).

Associational standing may exist when the association seeks monetary damages on behalf of individual members, as well as with other remedies. *See Firefighters,* 146 Wn.2d at 214-16. In a suit seeking monetary damages, the third prong will be satisfied if the amount of monetary relief requested on behalf of each member is "certain, easily ascertainable, and within the knowledge of the defendant." *Id.* at 215-16; *see also Pugh v. Evergreen Hosp. Med. Ctr.*, 177 Wn. App. 363, 366, 312 P.3d 665 (2013), *review denied*, 180 Wn.2d 1007 (2014). The fact that individual members may be required to testify does not automatically defeat associational standing. *Riverview*, 181 Wn.2d at 894 n.1; *Teamsters Local Union No. 117 v. Dep't of Corr.*, 145 Wn. App. 507, 513-14, 187 P.3d 754 (2008).

ESD does not dispute that WTA meets the first and second prongs of the three-part test for associational standing. The Carriers have standing in their own right and the issues are germane to WTA's purpose. ESD challenges the third prong – whether the claim or the relief requires the participation of the WTA's individual members.

The tortious interference claim clearly does not meet the third prong because it involves a request for monetary damages and would require extensive member participation to resolve it.[5] Resolution of each member's claim would involve a fact-specific inquiry regarding the nature of

---

[5] In *Firefighters,* the Supreme Court explained that "[m]onetary damages are distinguishable from injunctive relief, in that injunctive relief generally benefits every member of an employee association equally whereas the amount of monetary damages an employee suffers may vary from employee to employee." 146 Wn.2d at 214.

the member's business expectancy with individual owner/operators, the extent of interference with that expectancy, and the amount of damages. Each carrier would need to provide individualized evidence and testimony regarding these issues. As a result, we hold that WTA does not have associational standing regarding the tortious interference claim.[6]

Regarding the § 1983 claim, WTA argues that the damages here are easily ascertainable because they consist of concrete amounts, such as the Carriers' litigation costs and attorney fees. It also argues that the punitive damages under § 1983 are determined by ESD's conduct, and therefore the participation of WTA members would not be necessary for those calculations.

However, at this stage in the litigation we cannot properly evaluate the third element of the associational standing test for the § 1983 claim. In WTA's and the Carriers' complaint, the requested relief is "[a]n award of damages under 42 U.S.C. § 1983 . . . , including punitive damages, in an amount to be proven at the time of trial." CP 229. This request for relief does not specify the type of damages WTA and the Carriers are claiming, and does not indicate the type of proof that will be required to establish the claimed damages. As a result, whether WTA has associational standing in this case to assert a § 1983 claim cannot be decided based on the complaint allegations and will depend on further development of the facts.

Accordingly, we hold that the trial court erred in ruling on a CR 12(b)(6) or CR 12(c) motion that WTA has no associational standing to assert a § 1983 claim.[7]

---

[6] WTA does not allege that it has received an assignment of its members' damages claims. *See Firefighters,* 146 Wn.2d at 214.

[7] If the only claimed damages were the amount of the assessments, there is no question that WTA would have associational standing because those damages are certain, easily ascertainable,

D.     SECTION 1983 CLAIM

WTA and the Carriers argue that the trial court erred in dismissing their § 1983 claim because their complaint alleged multiple violations of their constitutional rights, and those allegations must be presumed to be true.  ESD responds that the principle of comity bars § 1983 challenges to state taxes when an adequate state law remedy exists and that the ESA and the APA provide an adequate remedy here.[8]  We hold that comity bars the § 1983 claim to the extent that WTA and the Carriers seek damages based on the amounts of the assessments, but not to the extent that they seek damages independent of the assessment amounts.

1.     Alleged Violation of Constitutional Rights

42 U.S.C. § 1983 seeks to protect citizens who have been deprived of their rights under the Constitution by someone acting under the color of state law.  It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  When a state's conduct is at issue, individual state employees are subject to liability under § 1983, but the state and state agencies are not.  *Hontz v. State*, 105 Wn.2d 302, 309, 714 P.2d 1176 (1986).

---

and within ESD's knowledge.  *Firefighters,* 146 Wn.2d at 215-16.  However, as discussed below, we hold that claims for those damages are barred under the principle of comity.

[8] The trial court ruled that WTA and the Carriers could not pursue their § 1983 claims because they had not exhausted their administrative remedies.  ESD concedes that exhaustion is not required to file a § 1983 claim, and argues only that comity bars the § 1983 claim here.  Therefore, we do not address exhaustion of administrative remedies in this context.

WTA and the Carriers allege that the named ESD employees violated their constitutional rights in a number of ways. As stated above, for purposes of a CR 12(b)(6) or CR 12(c) motion we are required to presume that these allegations are true. Therefore, there is no question that WTA and the Carriers stated a claim under § 1983 in their complaint. The issue here is whether the principle of comity bars that claim.

2.      Principle of Comity

The principle of comity recognizes that the federal government, and particularly federal courts, must show "a proper respect for state functions" and must decline to "unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Comity is particularly important in cases involving state taxation because of the "important and sensitive nature of state tax systems." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981). "We have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586, 115 S. Ct. 2351, 132 L. Ed. 2d 509 (1995).

Because of comity, the United States Supreme Court "repeatedly [has] shown an aversion to federal interference with state tax administration." *Id.* For example, the Court held that federal courts could not render declaratory judgments as to the constitutionality of state tax laws. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298-302, 63 S. Ct. 1070, 87 L. Ed. 1407 (1943). Congress also has shown such an aversion. *Nat'l Private Truck*, 515 U.S. at 586.

16

Congress enacted the Tax Injunction Act (TIA) in 1937, which prevents federal courts from enjoining the assessment, levy, or collection of any state tax where a plain, speedy, and efficient remedy exists in state court. 28 U.S.C. § 1341.[9]

The United States Supreme Court has decided two cases that address application of the comity principle to § 1983 actions involving state taxation. In *Fair Assessment*, the plaintiffs filed a § 1983 action in federal court, alleging the unconstitutional administration of a local property tax system. 454 U.S. at 101, 105-06. Specifically, the plaintiffs alleged that administration of the property tax system violated equal protection and due process in that (1) properties with new improvements were assessed at a higher percentage of their current market value than properties without new improvements, and (2) property owners who successfully appealed their property assessments were targeted for reassessment the next year. *Id.* at 106. The plaintiffs sought damages in the amount of property tax overassessments over a four-year period and punitive damages. *Id.*

The Court reaffirmed the vitality of the common law comity principle apart from the TIA and the applicability of comity to actions seeking a remedy other than injunctive relief. *Id.* at 110-11. And it refused to limit the application of comity to declaratory judgment actions, stating that damages actions would require a declaration that a state tax scheme was unconstitutional and would be just as disruptive to the collection of taxes. *Id.* at 113-15. As a result, the Court held that the principle of comity bars § 1983 actions in federal court that seek damages based on the

---

[9] Both parties refer to the TIA in their briefs. However, the TIA is inapplicable here because WTA and the Carriers filed suit in state court and not in federal court, and the TIA does not limit state courts. *Nat'l Private Truck*, 515 U.S. at 588.

alleged invalidity of state tax systems. *Id.* at 116. The Court stated that taxpayers must pursue state remedies to protect their federal rights, "provided of course that those remedies are plain, adequate, and complete." *Id.*

In *National Private Truck*, the plaintiffs filed a § 1983 action in *state* court, alleging that certain Oklahoma taxes imposed against trucks registered in any of 25 states were unconstitutional. 515 U.S. at 584. The plaintiffs claimed that the taxes were discriminatory in violation of the dormant commerce clause and the privileges and immunities clause of the United States Constitution. *Id.* The plaintiffs sought declaratory and injunctive relief, and a refund of taxes paid. *Id.* The Oklahoma Supreme Court awarded tax refunds under state law, but declined to award relief under § 1983. *Id.* at 585.

The United States Supreme Court again emphasized the "background presumption that federal law generally will not interfere with administration of state taxes." *Id.* at 588. The Court held that the comity-based rule adopted in *Fair Assessment* for federal court actions applied equally to state court § 1983 actions. *Nat'l Private Truck*, 515 U.S. at 589-92. The Court concluded that state courts must refrain from granting declaratory or injunctive relief under § 1983 when state law provides an adequate legal remedy. *Id.* at 589, 592.

*National Private Truck* only addressed § 1983 claims that sought injunctive or declaratory relief against state taxes in state court. *Id.* at 592. But several lower courts have extended the *National Private Truck* holding to preclude damages claims under § 1983 in state court. *See*, *e.g.*, *Patel v. City of San Bernardino*, 310 F.3d 1138, 1141 (9th Cir. 2002) ("Read together, *Fair Assessment* and *National Private Truck* bar use of § 1983 to litigate state tax

18

disputes in either state or federal court."); *Kowenhoven v. County of Allegheny*, 587 Pa. 545, 901 A.2d 1003, 1014 (2006) ("although Section 1983 injunctive and declaratory relief were at issue in *National Private Truck Council*, its reasoning applies equally to a Section 1983 request for money damages, particularly in view of the Court's earlier pronouncement, in *Fair Assessment*").

*National Private Truck* and *Fair Assessment* establish that regardless of the type of relief sought, the principle of comity bars a § 1983 claim challenging a state tax system filed in state court if state law provides an adequate remedy.

3.      Adequacy of State Law Remedy

Under *National Private Truck* and *Fair Assessment*, whether the comity principle bars WTA's and the Carriers' § 1983 claim relating to the ESD assessments and audits depends on whether state law – the ESA and the APA – provides WTA and the Carriers with an adequate remedy.[10]  We hold that state law provides an adequate remedy for damages based on the amount of the assessment, but not for damages independent of the amount of the assessment.

a.    Legal Principles

In *Fair Assessment*, the United States Supreme Court held that obtaining a court declaration regarding the validity of a state tax violates the principle of comity as long as the state remedy is "plain, adequate, and complete."  454 U.S. at 116.  At a minimum, such a state remedy must provide a hearing at which the taxpayer may raise constitutional objections to the

---

[10] ESD argues only that the ESA and the APA provide an adequate remedy.  Because ESD does not offer any other potential adequate remedies, we will not expand our analysis to consider whether other alternative remedies exist.

tax. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512-14, 101 S. Ct. 1221, 67 L. Ed. 2d 464 (1981).

The Court in *Fair Assessment* stated that there was no significant difference between the "plain, adequate, and complete" standard and the "plain, speedy and efficient" standard used in the TIA. 454 U.S. at 116 & n.8. In *Rosewell*, the Court considered the meaning of "plain, speedy and efficient" under the TIA. 450 U.S. at 512-19. Breaking the standard down into its individual parts, the Court noted that remedies that are uncertain or unclear are not "plain." *Id.* at 517. The speediness of a remedy must be judged against the usual time for similar litigation. *Id.* at 518. Finally, a remedy is efficient if it imposes no unusual hardship that requires ineffectual activity or unnecessary expenditure of time or energy. *Id.* at 517-18. The Court ultimately held that the remedy at issue – refunding the challenged taxes without interest after two years – was plain, speedy, and efficient. *Id.* at 528.

For a state remedy to be adequate, "it need not necessarily be 'the best remedy available or even equal to or better than the remedy which might be available in the federal courts.' " *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974) (quoting *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir. 1972)) (addressing standard under the TIA).

        b.    Adequate Remedy for Invalidating Assessments

RCW 50.32.050 authorizes the ALJ to "affirm, modify or set aside the notice of assessment." Therefore, to the extent that WTA and the Carriers are seeking damages under §

1983 for the amount of the challenged assessments, the ESA's administrative process affords an adequate remedy.

WTA and the Carriers have the ability to argue before the ALJ, as they alleged in their complaint, that (1) the unemployment tax assessments are invalid because ESD misclassified owner/operators as employees, (2) federal law preempts ESD's decision to classify owner/operators as employees, (3) the unemployment tax assessments violate the commerce clause of the United States Constitution, and (4) the assessments are invalid because they resulted from an improper audit process that violated ESD's own standards. The ALJ has the authority to address these arguments in deciding whether to affirm, modify, or set aside the assessment under RCW 50.32.050. In fact, the ALJ addressed the classification of owner/operators when it remanded the assessments to ESD for reconsideration. In its remand order, the ALJ specifically ordered that ESD "review, reconsider and re-write" its findings regarding the classification of employees. CP 299. Similarly, the ALJ considered preemption when it addressed the Carriers' summary judgment motion.

If WTA and the Carriers disagree with the ALJ's ruling and the subsequent decision of the commissioner on the classification of owner/operators, preemption, or the commerce clause, they can seek a ruling that the assessments are invalid on judicial review under the APA. They will be able to invalidate the assessments if they can show that the commissioner "erroneously interpreted or applied the law," RCW 34.05.570(3)(d), that the assessments violated due process, equal protection, or the commerce clause, RCW 34.05.570(3)(a), or that imposing the assessments based on ESD's audit procedures violated the constitution. RCW 34.05.570(3)(a).

21

Because there is an adequate state law remedy, barring a § 1983 action for damages based on the amount of the challenged assessments is required under *Fair Assessment*. Before WTA and the Carriers could recover damages based on the amount of the assessments, they would have to obtain a declaration from the court that the assessments were in fact invalid. The Court in *Fair Assessment* held that obtaining such a court declaration regarding a state tax violates the principle of comity. 454 U.S. at 113-15.

WTA and the Carriers appear to argue that they do not have an adequate remedy regarding damages under § 1983 in the amount of the challenged assessments for two reasons. First, they argue that WTA, as opposed to the Carriers, has no adequate state remedy because it has no administrative or appeal rights. WTA points out that it is not seeking to avoid taxes and none were imposed on it. However, as discussed above, to the extent WTA has standing to seek damages in the amount of the challenged assessments, that standing is representative only. WTA cannot have greater rights than the members it is representing. *See Five Corners Family Farmers v. State*, 173 Wn.2d 296, 304, 268 P.3d 892 (2011) (stating that "[o]rganizations have standing to assert the interests of their members").

Second, WTA and the Carriers argue that they do not have an adequate state law remedy because the ALJ excluded evidence regarding the allegedly improper audits and evidence relevant to their preemption argument. However, on judicial review under the APA, the superior court can determine whether such evidence is relevant to the validity of the assessment. RCW 34.05.562 (authorizing the court to receive necessary evidence not contained in the agency

record).  And the superior court has authority under RCW 34.05.574 to remand the matter for further proceedings.

We hold that the ESA's administrative process affords an adequate remedy to the extent that WTA and the Carriers are seeking damages under § 1983 for the amount of the challenged unemployment tax assessments.  Accordingly, we hold that the principle of comity bars all § 1983 claims asserting such damages.

    c.  Inadequate Remedy for Damages Independent of Assessments

Under the ESA, the ALJ's authority is limited.  As noted above, RCW 50.32.050 authorizes the ALJ only to "affirm, modify or set aside the notice of assessment."  On review, the superior court's authority similarly is limited to issues relating to the assessment.  Therefore, to the extent that WTA and the Carriers are seeking damages under § 1983 that are independent of the amount of the challenged assessments, the ESA's administrative process does not afford an adequate remedy.

WTA and the Carriers allege in their complaint that the ESD employees' failure to properly conduct the audits resulting in the assessments violated their due process rights and that the employees' arbitrary and capricious conduct violated their due process and equal protection rights.  These allegations can be interpreted as not depending on the invalidity of the assessments.  WTA and the Carriers arguably are alleging that the named employees' conduct violated due process regardless of whether the assessments were valid.

WTA and the Carriers request damages under § 1983, but the complaint does not specify the type of damages claimed.  As discussed above, the principle of comity bars all § 1983 claims

asserting damages for the amount of the challenged assessments. However, the complaint could be interpreted as seeking damages independent of the validity of the assessments. For example, a carrier could allege that it lost income and incurred other financial losses apart from the amount of the assessment because the assessments and/or audits disrupted its relationship with owner/operators.

WTA and the Carriers have no ability to argue before the ALJ that they are entitled to damages that are unrelated to the amount of the challenged assessment. RCW 50.32.050 simply does not authorize the ALJ to award such damages. The ALJ can only modify or set aside the assessment, which would result in a tax refund. Nor does the APA authorize the award of such damages on judicial review. RCW 34.05.574. Therefore, the ESA's and APA's administrative process does not afford an adequate remedy for these types of § 1983 damages.

WTA and the Carriers specifically allege two types of damages that are unrelated to the amount of the challenged assessment. First, they allege that they incurred costs and attorney fees in defending against the incorrect assessments. RCW 50.32.050 does not authorize the ALJ to award reasonable attorney fees. Second, WTA and the Carriers seek an award of punitive damages under § 1983. Again, RCW 50.32.050 does not authorize the ALJ to award punitive damages.

We hold that WTA and the Carriers do not have an adequate state law remedy for damages that are caused by ESD's assessments or audit procedures that are unrelated to the amount of the challenged assessment. Accordingly, we hold that the principle of comity does not bar a § 1983 claim asserting such damages.

E.      TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS EXPECTANCIES

The Carriers allege in their complaint that by reclassifying owner/operators as employees, ESD engaged in tortious interference with their contractual relationships and business expectancies with owner/operators.[11]  ESD argues that (1) the Carriers' tortious interference claim is barred by the exclusive remedy provision of the ESA and/or the doctrine of exhaustion of administrative remedies; and (2) even if the claim is not barred, the Carriers did not allege the elements of tortious interference.

We hold that (1) the exclusive remedy provision of the ESA and the doctrine of exhaustion of administrative remedies bar the tortious interference claim to the extent that the claim is based on an allegation that the reclassification of owner/operators as employees was improper, but not to the extent that the claim is based on allegations that ESD had an improper motive or used improper means in making that reclassification; and (2) the Carriers' complaint allegations were sufficient to state a claim for tortious interference.

1.    Legal Principles

A claim of tortious interference with a contract or business expectancy requires (1) the existence of a valid contractual relationship or business expectancy, (2) the defendant's knowledge of that relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) the defendant's interference for an improper purpose or use of improper means, and (5) resultant damages. *Pac. Nw. Shooting Park Ass'n v.*

---

[11] As discussed above, to the extent that WTA is asserting tortious interference claims on behalf of its members, it would not have associational standing because determining tortious interference damages would require the involvement of individual carriers.

*City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006). More recently, the Supreme Court

consolidated this definition into three elements: "(1) the existence of a valid contractual

relationship of which the defendant has knowledge, (2) intentional interference with an improper

motive or by improper means that causes breach or termination of the contractual relationship,

and (3) resultant damage." *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 168, 273 P.3d

965 (2012).

An examination of improper purpose focuses on the *motive* for the defendant's

interference with the contract, such as greed, retaliation, or hostility. *See Elcon*, 174 Wn.2d at

169; *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App. 502, 509, 278 P.3d 197

(2012). When examining improper means, we look to the *method* by which a defendant

interferes with the contractual relationship, such as taking arbitrary and capricious action or

using the threat of a lawsuit to harass. *See Pleas v. City of Seattle*, 112 Wn.2d 794, 805, 774

P.2d 1158 (1989); *Moore*, 168 Wn. App. at 509.

2.    The ESA's Exclusive Remedy Provision

RCW 50.32.180, the ESA's exclusive remedy provision, provides:

> The remedies provided in this title for determining the justness or correctness of
> assessments, refunds, adjustments, or claims shall be exclusive and no court shall
> entertain any action to enjoin an assessment or require a refund or adjustment
> except in accordance with the provisions of this title.

The language is clear that the ESA is the exclusive remedy only for challenges made to the

"justness or correctness" of assessments, refunds, adjustments, or claims.

RCW 50.32.180 bars the Carriers' tortious interference claims to the extent that the

claims depend on a finding that ESD's assessments based on the reclassification of

26

owner/operators as employees were unjust or incorrect. Under the statute's plain language, that determination must be made under the ESA's appeal procedures. RCW 50.32.180 also would bar the recovery of the amount of the assessments as tortious interference damages.

However, in this context the Carriers do not necessarily argue that the assessments were incorrect. They argue that ESD had an improper purpose or used improper means in making the reclassification of owner/operators that led to the assessments. The Carriers' complaint alleged that ESD's improper purpose was to "target the trucking industry" in order to collect additional taxes. CP 221 (paragraphs 34-35). In a different cause of action, the Carriers also alleged that (1) ESD had a "malevolent purpose – to restructure Washington's trucking industry and to increase the State's revenues," CP 227 (paragraph 56), and (2) ESD's actions "constitute a bad faith application of Washington law and manipulation of same for an improper purpose." CP 227 (paragraph 57). In addition, the complaint alleged that ESD used improper means – predetermining the audit outcomes and requiring auditors to find that owner/operators were employees.

Because RCW 50.32.180 provides that the ESA is the exclusive remedy only for determining the justness or correctness of assessments, that statute does not apply to determining whether ESD had an improper purpose or used improper means in imposing those assessments.[12] Therefore, we hold that RCW 50.32.180 does not bar the Carriers' tortious interference claim to

---

[12] It could be argued that RCW 50.32.180 would apply if the Carriers were required to prove that the assessments were incorrect in order to recover for tortious interference. The elements of tortious interference do not expressly include proving that a defendant's interference *itself* is improper or incorrect, but Washington cases have not discussed this issue. However, we do not address this issue because neither party raises it.

the extent that the claim is based on allegations that ESD had an improper purpose or used improper means in making the reclassification of owner/operators.

        3.    Exhaustion of Administrative Remedies

The doctrine of exhaustion of administrative remedies applies in cases where a claim is originally cognizable by an agency that has clearly defined mechanisms for resolving complaints by aggrieved parties, and the administrative remedies can provide the relief sought. *Jones v. State*, 170 Wn.2d 338, 356, 242 P.3d 825 (2010). Therefore, "if an administrative proceeding can alleviate the harmful consequences of a governmental activity at issue, a litigant must first pursue that remedy before the courts will intervene." *Smoke v. City of Seattle*, 132 Wn.2d 214, 223-24, 937 P.2d 186 (1997).

Administrative remedies must be exhausted if the relief sought can be obtained through an exclusive or adequate administrative remedy. *Evergreen Wash. Healthcare Frontier, LLC v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 431, 446, 287 P.3d 40 (2012), *review denied*, 176 Wn.2d 1028 (2013). An administrative remedy may be adequate for purposes of requiring exhaustion even if it does not provide the precise relief sought or provide complete relief. *Id.* However, if there is no administrative remedy available, exhaustion is not required. *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 645, 310 P.3d 804 (2013).

Here, as discussed above, the administrative process provides an adequate remedy to the extent that the Carriers' tortious interference claim is based on an allegation that the reclassification of owner/operators as employees was improper, but no administrative remedy is available to the extent that the claim is based on allegations that ESD had an improper purpose or

used improper means in making that reclassification. Therefore, we hold that the exhaustion of remedies doctrine does not bar the Carriers' tortious interference claims to the extent that the claims are based on allegations that ESD had an improper purpose or used improper means in making the reclassification of owner/operators.

4.     Sufficiency of Complaint Allegations

The Carriers allege in their complaint that (1) they have ongoing contractual relationships and business expectancies with owner/operators; (2) ESD was aware of these relationships and expectancies; (3) ESD interfered with the business relationship between the Carriers and owner/operators and deprived the Carriers of their ability to contract with owner/operators as independent contractors; (4) ESD interfered by reclassifying owner/operators as employees; and (5) the Carriers suffered damages as a result.

ESD argues that even if the Carriers' claims are not barred, their complaint failed to state a claim because (1) Washington law establishes that owner/operators should be classified as employees, and (2) the alleged interference must cause a breach or termination of the contractual relationship. We disagree.

First, ESD argues that the Carriers' claim that ESD erroneously reclassified owner/operators as employees was rejected in *Western Ports Transportation, Inc. v. Employment Security Department*, 110 Wn. App. 440, 454, 41 P.3d 510 (2002). As a result, ESD argues that WTA and the Carriers cannot prove their tortious interference claim. However, as discussed above, the Carriers potentially can recover for tortious interference even if ESD's reclassification decision was correct. Therefore, we reject this argument.

Second, ESD relies on *Elcon* to argue that WTA and the Carriers were required to allege that ESD's alleged interference resulted in a breach of contract. The court in *Elcon* stated that a tortious interference claim requires, as the second element, intentional interference "that causes breach or termination of the contractual relationship." 174 Wn.2d at 168. This statement seems to require that the plaintiff allege a breach or termination of a contract. WTA and the Carriers made no such allegation.

However, in *Elcon* the tortious interference claim was based on the termination of an existing contract. *Id.* at 162-63. Therefore, in stating its three-element test, the court only needed to address whether a contract had been terminated and not the interference with some business expectancy. Other than in *Elcon*, the Supreme Court exclusively has relied on the longer five element test for tortious interference since it was established in *Pleas v. City of Seattle*, 112 Wn.2d 794, 800, 803-04, 774 P.2d 1158 (1989). *See Pac. Nw. Shooting Park*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997); *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992). Element three of that test requires "an intentional interference inducing or causing a breach or termination of the relationship *or expectancy*." *Pac. Nw. Shooting Park*, 158 Wn.2d at 351 (emphasis added).

In *Commodore*, the court explicitly stated that, "Washington . . . does not require the existence of an enforceable contract or the breach of one to support an action for tortious interference with a business relationship." 120 Wn.2d at 138. In that case, the court held that the plaintiff had a valid tortious interference claim even though he did not allege that his contract

was breached or terminated. *Id.* at 137-38. Given this clear law, we do not interpret *Elcon* as eliminating the business expectancy aspect of the tortious interference claim.

The question here is whether the Carriers alleged breach or termination of a business expectancy. The complaint alleges that ESD's reclassification of owner/operators "precludes the Carriers from contracting with independent owner/operators" and "deprived the Carriers of their ability to choose to contract with independent owner/operators." We hold that these allegations are sufficient to allege the breach or termination of a business expectancy.

We hold that the Carriers' complaint states a valid claim for tortious interference of a contract or business expectancy.

F.    ATTORNEY FEES

WTA and the Carriers request an award of attorney fees under 42 U.S.C. § 1988 and RAP 18.1.

42 U.S.C. § 1988(b) provides that in an action to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." RAP 18.1 permits an award of attorney fees on appeal if applicable law permits such award.

Because § 1988 only authorizes attorney fees for the prevailing party and we remand the § 1983 claim for further proceedings, we decline to award attorney fees until the case is resolved. *See Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 28-29, 829 P.2d 765 (1992).

CONCLUSION

We hold that (1) WTA may have associational standing only regarding a § 1983 claim, but here this determination cannot be made on a CR 12(b)(6) or CR 12(c) motion; (2) WTA and the Carriers can assert a § 1983 claim despite the comity principle only to the extent that they seek damages unrelated to the assessment amounts; (3) the Carriers can assert claims for tortious interference with contracts or business expectancies despite the exclusive remedy provision of RCW 50.32.180 and the failure to exhaust administrative remedies only to the extent that the claims are based on allegations that ESD had an improper purpose or used improper means in imposing the unemployment tax assessments and not on the incorrectness of those assessments; and (4) the complaint allegations are sufficient to state a claim for tortious interference with contracts or business expectancies.

We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

MAXA, J.

We concur:

JOHANSON, C.J.

BJORGEN, J.