**CARRIER CORPORATION,**
**Plaintiff, Appellant,**

v.

**Hon. Julio Cesar PEREZ, Etc.,**
**Defendant, Appellee.**

**No. 81–1485.**

United States Court of Appeals,
First Circuit.

Argued Feb. 2, 1982.

Decided May 3, 1982.

Jay A. Garcia Gregory, San Juan, P. R., with whom Fiddler, Gonzalez & Rodriguez, San Juan, P. R., was on brief, for plaintiff, appellant.

Lorraine Riefkohl de Lopez, Asst. Sol. Gen. Dept. of Justice, San Juan, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for defendant, appellee.

Before GIBSON,* BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The appellant, Carrier Corporation ("Carrier") brought a suit in the federal district court for Puerto Rico seeking a declaration that a Puerto Rico tax on the electrical products that Carrier ships there is unlawful. Carrier's complaint alleges that the tax is more onerous as applied to goods sent from the continental United States to Puerto Rico than is a similar tax applied to goods made in Puerto Rico itself.[1] The complaint claims that the tax upon it therefore violates 1) the Internal Revenue Code's provision that

> all articles . . . of United States manufacture coming into Puerto Rico shall be entered . . . upon payment of a tax equal in rate and amount to the . . . tax imposed in Puerto Rico upon like articles of Puerto Rican manufacture.

26 U.S.C. § 7653(a)(1), 2) the Federal Relations Act requirement that

> The "cost in Puerto Rico" shall be determined as follows:
> (1) *Importers.* In the case of an importer, the cost in Puerto Rico shall be the cost at factory plus ten (10) percent of that cost (as an average allowance for transportation and insurance expenses).
> (2) *Manufacturer.* In the case of a manufacturer, the "cost in Puerto Rico" shall be the total cost of the raw material, the cost of direct labor, the cost of general manufacturing expenses, and the cost of containers.
> 13 L.P.R.A. § 4055(b)(1) and (2).

The Secretary has determined in this case, that a *manufacturer,* as described in subsection (b)(2), is only a manufacturer whose activities take place in the Commonwealth. Carrier challenges the validity of that determination.

---

* Of the Eighth Circuit, sitting by designation.

1. The controversy rests on the Secretary's determination of Carrier's status under the relevant provisions of the Excise Act of Puerto Rico, 13 L.P.R.A. §§ 4001 *et seq.* The basis for computing the excise tax under the Act is, in most cases, the "taxable price in Puerto Rico," 13 L.P.R.A. § 4010. *See also* 13 L.P.R.A. § 4022. As a general rule, " 'The taxable price in Puerto Rico' shall mean the 'cost in Puerto Rico' plus twenty (20) percent of that cost. . . ." 13 L.P.R.A. § 4055(a)(1). For determining the "cost in Puerto Rico," the Excise Act establishes several criteria. 13 L.P.R.A. § 4055(b). Among these criteria, the one accounting for the suit is that provided for *importers* on the one hand, and for *manufacturers* on the other. It provides:

no discrimination be made between the articles imported from the United States . . . and similar articles produced or manufactured in Puerto Rico.

48 U.S.C. § 741a, and 3) the Equal Protection and Due Process Clauses of the United States Constitution. In addition, Carrier argues, for the first time on this appeal, that the tax imposes an unconstitutional burden on interstate commerce. U.S. Constitution, art. 1, sec. 8 cl. 3, *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); *Wheeling Steel Corp. v. Glander*, 337 U.S. 562, 69 S.Ct. 1291, 93 L.Ed. 1544 (1949). *See generally* L. Tribe, *American Constitutional Law* 344 *et seq.* (1978). The district court dismissed Carrier's suit on the ground that federal law prohibits a federal court from hearing such a challenge to the collection of a state tax where the state remedy is adequate. We believe the district court was correct.

■ The federal statute directly on point—the Butler Act—provides that

No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court for Puerto Rico.

48 U.S.C. § 872. *See Smallwood v. Gallardo*, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152 (1927). *See also* J. Trias Monge, *Historia constitucional de Puerto Rico*, vol. II, 160–61 (1981). The Butler Act applies to a suit for declaratory judgment, for a federal court declaration of invalidity would have much the same negative effect upon the collection of a Commonwealth tax as would an injunction. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300–01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). Of course, the Butler Act may be more flexible than its words at first suggest, for this court has held, in *United States Brewers Assoc. v. Perez*, 592 F.2d 1212, 1213–14 n.2 (1st Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 43 (1979), that it is to be applied like the Tax Injunction Act, 28 U.S.C. § 1341, which prohibits federal district courts from enjoining, suspending or restraining the assessment, levy or collection of *a state tax* "where a plain, speedy and efficient remedy" may be had in the state courts. But, even as flexibly interpreted, the Butler Act forbids this federal suit.

The laws of Puerto Rico explicitly provide that a taxpayer who believes that he has paid excess tax, or a tax unlawfully collected, may apply to the Secretary of the Treasury for a refund. 13 L.P.R.A. § 261. *See Sucn. Bravo v. Secretario de Hacienda*, 106 D.P.R. 672, 675 (1978). If the Secretary decides against the taxpayer he can appeal to the Superior Court of Puerto Rico. 13 L.P.R.A. § 282A(6). *See Baring Industries v. Secretario de Hacienda*, 101 D.P.R. 835 (1973); *Cerveceria India v. Secretary of the Treasury*, 80 P.R.R. 262 (1958). Review by the Supreme Court of Puerto Rico is authorized by 4 L.P.R.A. § 37. And, the taxpayer can seek review of any final Commonwealth court decision by the Supreme Court of the United States. 28 U.S.C. § 1258. Carrier is free to make all the arguments that it makes here in those proceedings before the courts of Puerto Rico, and, if appropriate, before the Supreme Court of the United States. Hence, review in the Commonwealth system would seem "plain, speedy and efficient." This suit is thus barred by the Tax Injunction Act language, and *a fortiori*, it is barred by the Butler Act. *See Strescon Industries, Inc. v. Cohen*, 664 F.2d 929, 932 (4th Cir. 1981); *Cities Service Gas Co. v. Oklahoma Tax Commission*, 656 F.2d 584, 587–88 (10th Cir.), *cert. denied*, 102 S.Ct. 972 (1981).

Carrier seeks to avoid the plain import of the statutory language and this logic by arguing that it is not free to raise the federal "Commerce Clause" argument in the Commonwealth courts. It argues that the Supreme Court of Puerto Rico has held in *RCA v. Government of the Capital*, 91 P.R.R. 404 (1964), that, in Carrier's words, "[t]he Commerce Clause does not apply to Puerto Rico." Therefore, in its view, the courts of Puerto Rico are closed to its Commerce Clause claim, and it is without a legal remedy outside the federal court.

We reject Carrier's argument for three reasons. First, we do not agree with Carrier's categorical reading of the *RCA* case. In our view, the position taken by the Supreme Court of Puerto Rico in that case is far more flexible. The court wrote that the federal "interstate commerce relation has constitutionally had, and still has, contours which are different from the relation which under the Constitution prevails among the states of the union." 91 P.R.R. at 419. The court went on to explain that, in light of various laws of Congress and the Puerto Rico Federal Relations Act itself, 39 Stat. 954, what constitutes an unconstitutional obstacle to interstate commerce might be somewhat different where Puerto Rico, rather than a state, is involved. *See Mora v. Mejias*, 206 F.2d 377, 387 n.6 (1st Cir. 1953). But it did *not* fully set forth its view of the "contours" of this constitutional relation. Instead the court went on to hold that, *regardless*, even if the Commerce Clause applies to Puerto Rico precisely as it does to a state, the tax at issue was lawful, 91 P.R.R. at 423. *See also South Puerto Rico Sugar Corporation v. Public Service Commission of Puerto Rico*, 93 P.R.R. 11, 14–16 (1966). Similarly, we here need not address the question of the "contours" of the Commerce Clause-Commonwealth relationship. *See generally, e.g.*, Fuster, *The Origins of the Doctrine of Territorial Incorporation and its Implications Regarding the Power of the Commonwealth of Puerto Rico to Regulate Interstate Commerce*, 43 Rev.Jur.U.P.R. 259 (1974); Helfeld, *How Much of the Federal Constitution is Likely to be Held Applicable to the Commonwealth of Puerto Rico*, 39 Rev.Jur.U.P.R. 177, 188–91 (1970). Rather, we need simply note that Carrier is free to make a Commerce Clause-based argument in the courts of Puerto Rico, and to pursue that argument to the Supreme Court of the United States if necessary. The Butler Act, at most, requires assurance that a plaintiff will have an opportunity to make an argument in state court, not that he will win.

Second, Carrier's statutory and constitutional arguments are virtually the same. That is to say, if Carrier were to succeed in proving discrimination against the continental United States manufacturer sufficient to impose an "unconstitutional" burden on interstate commerce, it is almost certain to have proved a "discrimination" that is forbidden by the Puerto Rico Federal Relations Act. *See Welton v. Missouri*, 91 U.S. 275, 23 L.Ed. 347 (1876); *cf.* Helfeld, *supra* at 190. Under these circumstances for a federal court to hear this case would lead that court either unnecessarily to decide a constitutional question that might otherwise be avoided or to decide issues arising under the Puerto Rico Federal Relations Act that the courts of Puerto Rico are, at least, equally willing and able to hear. *Cf. United States Brewers Association, Inc. v. Secretario de Hacienda*, 109 D.P.R. 456 (1980). The first of these alternatives violates the well-established judicial policy against needlessly determining constitutional issues, *Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974), and the second violates the policies underlying the Butler and Tax Injunction Acts. Therefore, we believe that a plaintiff must demonstrate that the federal claim that it believes the state will not hear differs from the claims that it will hear significantly, and not just theoretically or logically, before a federal court could find that the state remedy is inadequate.

Third, at most, Carrier's argument amounts to an assertion that it faces unfavorable Commonwealth court precedent on the substantive merits of its constitutional claim. But nothing in the Tax Injunction Act suggests that a plaintiff can forum shop for a more favorable view of the federal law. *Cities Service Gas Co. v. Oklahoma Tax Commission*, 656 F.2d at 586. To the contrary, the Supreme Court has specifically held that the words "plain, speedy and efficient remedy" are to be given a purely *procedural* interpretation. A state remedy is adequate if it meets "certain minimal *procedural* criteria," which include an opportunity to *raise* the desired legal objections with the eventual possibility of Supreme Court review of that claim. *Rosewell v. LaSalle National Bank*, 450 U.S. 503,

512, 101 S.Ct. 1221, 1228, 67 L.Ed.2d 464 (1981); *Strescon Industries, Inc. v. Cohen,* 664 F.2d at 931; *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128, 133 (7th Cir. 1981). Thus, the Supreme Court in *Rosewell* upheld a state court refund procedure because it "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax," 450 U.S. at 514, 101 S.Ct. at 1229. The Court wrote,

> The Tax Injunction Act embodied Congress' decision to transfer jurisdiction over a class of substantive federal claims from the federal district courts to the state courts, as long as state-court procedures were 'plain, speedy and efficient' and final review of the substantive federal claim could be obtained in this Court .... [A] taxpayer [must be able to] raise all constitutional objections ... in the [state's] legal refund proceeding ..., after which the litigant [must have] an opportunity to seek review in this Court. The Act contemplates nothing more.

*Id.* at 515–16 n.19, 101 S.Ct. at 1230 n.19. Were unfavorable state court precedent on the federal question by itself sufficient to pry open the doors of the federal courts, a plaintiff might simply search for a federal claim upon which there was such precedent and insert it in his complaint, thereby subverting the Tax Injunction Act's basic purposes "of freeing, from interference by federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid,"—*Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. at 301, 63 S.Ct. at 1074—and of limiting "drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *Rosewell v. LaSalle National Bank,* 450 U.S. at 522, 101 S.Ct. at 1233 [2].

We do not believe that *Hillsborough v. Cromwell,* 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946), holds to the contrary. That case allowed federal court jurisdiction on the basis of uncertainty about a state remedy because 1) the state board of tax appeals could not pass upon constitutional questions (subsequent state court review was discretionary) and 2) New Jersey apparently would not allow a taxpayer to raise a federal "equal protection" claim in a suit to lower his own taxes. Consistent with the Supreme Court's "procedural" view in *Rosewell,* that case seems best understood as one in which a taxpayer could not *raise* a federal claim, *see Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 116 n.8, 102 S.Ct. 177, 186 n.8, 70 L.Ed.2d 271 (1981); *Rosewell v. LaSalle National Bank,* 450 U.S. at 517 n.21, 101 S.Ct. at 1231 n.21, rather than a case like this one, where a state or Commonwealth court, at worst, may have a

---

**2.** Recently, in *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 108 n.6, 102 S.Ct. 177, 182 n.6, 70 L.Ed.2d 271 (1981) the Supreme Court explained that:

> The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with

consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*quoting* from Justice Brennan's concurring and dissenting opinion in *Perez v. Ledesma,* 401 U.S. 82, 127–28 n.17, 91 S.Ct. 674, 698–99 n.17, 27 L.Ed.2d 701 (1971). These principles of federalism underlie the Tax Injunction Act, *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976) and might counsel withholding of relief even in tax related cases not covered by the Tax Injunction Act. *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. at 106–113, 102 S.Ct. at 181–84; *Rosewell v. LaSalle National Bank,* 450 U.S. at 525–26 n.33, 101 S.Ct. at 1235–36 n.33.

slightly less favorable view of the federal law. *Cities Service Gas Co. v. Oklahoma Tax Commission,* 656 F.2d at 586–87.

For these reasons, we believe that the taxpayer's remedy in the Commonwealth courts is "plain, speedy and efficient," and the district court's dismissal of this case is

*Affirmed.*