

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE APR 2 7 2017

Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on April 27, 2017

Susan L. Carlson
**SUSAN L. CARLSON**
**SUPREME COURT CLERK**

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

WASHINGTON TRUCKING ASSOCIATIONS, a Washington nonprofit corporation; EAGLE SYSTEMS, INC., a Washington corporation, GORDON TRUCKING, INC., a Washington corporation; HANEY TRUCK LINE, INC., a Washington corporation; JASPER TRUCKING, INC., a Washington corporation; PSFL LEASING, INC., a Washington corporation; and SYSTEM TWT TRANSPORTATION d/b/a SYSTEM TWT, a Washington limited liability company,

                               Respondents,

      v.

THE STATE OF WASHINGTON, EMPLOYMENT SECURITY DEPARTMENT; PAUL TRAUSE, individually and in his official capacity as the former Commissioner of the Employment Security Department, and JANE DOE TRAUSE, husband and wife and the marital community composed thereof; BILL WARD, individually and in his official capacity, and JANE DOE WARD, husband and wife and the marital community composed thereof; LAEL BYINGTON, individually and in his official capacity, and JANE DOE BYINGTON, husband and wife and the marital community composed thereof; JOY STEWART, a single individual, individually and in her official capacity; MELISSA HARTUNG, a single individual, individually and in her official capacity; ALICIA SWANGWAN, a single individual, individually and in her official capacity,

                               Petitioners.

NO. 93079-1

EN BANC

Filed    APR 2 7 2017

STEPHENS, J.—The principal issue in this case is whether taxpayers may bring federal or state tort claims to challenge tax assessments, or instead must rely on the normal state tax appeals process. The taxpayers here are trucking companies that were assessed unemployment taxes after the Washington State Employment Security Department audited and reclassified their employment relationship with owner-operators who own and lease out their own trucking equipment. The trucking companies, joined by their trade organization, Washington Trucking Associations, brought this suit in Thurston County Superior Court, asserting a civil rights claim under 42 U.S.C. § 1983 and a state common law claim for tortious interference with business expectancies.

The superior court dismissed the suit, holding that the trucking companies must challenge the tax assessments through the state tax appeals process. The Court of Appeals reversed in part, holding that the comity principle precludes the section 1983 claim only "to the extent that [Washington Trucking Associations] and the [trucking companies] seek damages based on the amounts of the assessments, but not to the extent that they seek damages independent of the assessment amounts." *Wash. Trucking Ass'n v. Emp't Sec. Dep't*, 192 Wn. App. 621, 641, 369 P.3d 170 (2016). The appeals court further held that the exclusive remedy provision of Washington's Employment Security Act, RCW 50.32.180, bars the tort claim only

"to the extent that the claim is based on an allegation that the reclassification of owner/operators as employees was improper." *Wash. Trucking Ass'n*, 192 Wn. App. at 650.

We reverse the Court of Appeals and reinstate the superior court's dismissal of both the federal and state claims.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Washington's Employment Security Act (ESA), Title 50 RCW, provides for the "compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." RCW 50.01.010. Under the ESA, "employers" pay "'contributions,'" i.e. taxes, for persons engaged in "employment," i.e., employees. RCW 50.24.010; RCW 50.04.072, .100. Persons engaged in "employment" include independent contractors so long as they perform "personal services" under a contract and an exemption does not apply. RCW 50.04.100, .140, .145. Consistent with the statutory mandate for liberal construction, RCW 50.01.010, courts construe exemptions to the ESA narrowly. *See Shoreline Cmty. Coll. Dist. No. 7 v. Emp't Sec. Dep't*, 120 Wn.2d 394, 406, 842 P.2d 938 (1992).

The ESA authorizes the commissioner of the Washington State Employment Security Department (Department) to administer the State's unemployment

compensation system, which includes auditing employers. RCW 50.04.060; RCW 50.12.010; Clerk's Papers (CP) at 220. Pursuant to that power, the Department audited commercial trucking companies (Carriers[1]) that lease trucks from and secure the driving services of independent contractors (owner-operators). The Department reclassified the owner-operators as Carrier employees, resulting in additional unemployment tax assessments on the Carriers. CP at 222; *see also* RCW 50.24.070.

The Carriers timely appealed the assessments to the Office of Administrative Hearings pursuant to RCW 50.32.030. In that tribunal, they filed a consolidated motion for summary judgment, arguing that the owner-operators are independent contractors or otherwise exempt from coverage; that federal law preempts the ESA with respect to the owner-operators; and that the tax assessments were based on biased, predetermined, and politically motivated audits.[2]

---

[1] For ease of reference, we use the term "Carriers" for any trucking company that has been involved in the facts relevant to this case.

[2] Specifically, the Carriers allege the Department improperly "established an underground economy unit" to conduct rigged audits of and "collect additional taxes" from the trucking industry. CP at 221-22; Resp'ts' Suppl. Br. at 1. The Department counters that "[t]here is nothing unlawful about targeting for audit an industry that is suspected of misclassifying covered workers as independent contractors" because "[a]uditing the industry levels the playing field." Br. of Resp'ts at 29 n.17; CP at 239-40.

The Carriers also claim the Department "'unilaterally decided to change the rules'" regarding the classification of owner-operators. CP at 654; Br. of Appellants at 11. They argue that, in the past, "the Commissioner determined, and the Court of Appeals confirmed, that owner/operators were not employees for which unemployment taxes were required." Br. of Appellants at 9 (citing *Penick v. Emp't Sec. Dep't*, 82 Wn. App. 30, 34-36, 39, 917 P.2d 136, *review denied*, 130 Wn.2d 1004 (1996)). The Department responds that its determination that owner-operators are employees is "consistent with *Western Ports*

An administrative law judge (ALJ) denied the Carriers' motion, concluding that the owner-operators are in employment of the Carriers at least for their personal driving services, and rejecting the Carriers' preemption argument as a matter of law. The ALJ further stated that the Carriers' challenges to the audits should be addressed at a hearing on the merits. He subsequently remanded the matter to the Department with instructions to reassess the taxability of the payments attributable to (1) equipment rental, (2) out-of-state driving services, and (3) corporate services.[3] CP at 299-301, 303-04; *see also* RCW 50.04.110, .165, .320(2).

After the ALJ's remand order, the Carriers and the Department entered into settlement negotiations. Believing a settlement had been reached, the Carriers brought a motion to enforce the agreement before the ALJ. After the ALJ ruled he lacked authority to enforce the agreement, the Carriers obtained an ex parte show cause order from Pierce County Superior Court. The superior court concluded that a settlement had been reached and entered an order enforcing the agreement.

The Department appealed that order to Division Two of the Court of Appeals, and the Court of Appeals reversed on jurisdictional grounds. *Eagle Sys., Inc. v.*

---

[*Transportation, Inc. v. Employment Security Department*], 110 Wn. App. [440,] 450-58, [41 P.3d 510 (2002)]," which came out six years after *Penick*. Br. of Resp'ts at 29 n.17, 42 n.27.

[3] Although only four Carriers moved for summary judgment, the ALJ remanded all other Carriers' pending administrative appeals on the same grounds.

*Emp't Sec. Dep't*, 181 Wn. App. 455, 457, 326 P.3d 764 (2014). Neither party sought review of that decision.

Shortly after the Department filed its appeal of the Pierce County order, the Carriers and Washington Trucking Associations (WTA)[4] filed the present action in Spokane County Superior Court against the Department and six of its current and former employees. Upon the Department's motion, the case was transferred to Thurston County Superior Court. The Carriers repeated the allegations raised in their administrative appeals, and along with WTA asserted a section 1983 claim against named Department employees as well as a claim against the Department for tortious interference with contracts and business expectancies.[5] WTA and the Carriers requested compensatory damages under both claims, as well as punitive damages and attorney fees under the section 1983 claim.

Thurston County Superior Court dismissed the action with prejudice on the Department's motion under CR 12(b)(6), failure to state a claim, and CR 12(c), judgment on the pleadings. That court orally ruled that (1) the Carriers must exhaust administrative remedies before challenging their tax assessments, (2) WTA lacks standing to sue under section 1983, and (3) the elements of tortious interference are

---

[4] The Carriers are all members of WTA, a trade association that was not audited or issued a tax assessment, and is not a party to the administrative appeals.

[5] WTA and the Carriers also brought claims for bad faith, conversion, and unjust enrichment, which are no longer at issue.

not met as a matter of law. Verbatim Report of Proceedings (VRP) (June 13, 2014) at 39-40.[6]

WTA and the Carriers sought direct review, but this court denied the request and instead transferred the case to Division Two of the Court of Appeals. Order, *Wash. Trucking Ass'n v. State*, No. 90584-3 (Wash. June 3, 2015). At the Court of Appeals, WTA and the Carriers challenged only the superior court's dismissal of their section 1983 claim and their tortious interference with business expectancies claim. *See* Br. of Appellants at 1 n.2.

The Court of Appeals reversed in part and remanded to the superior court for further proceedings on the surviving claims. *Wash. Trucking Ass'n*, 192 Wn. App. at 630. That court stated four relevant holdings: First, comity does not bar WTA's and the Carriers' section 1983 claim to the extent the damages sought are unrelated to the amount of the unemployment tax assessments. Second, whether WTA has associational standing to file a section 1983 claim cannot be determined without further factual development. Third, neither RCW 50.32.180 nor the doctrine of exhaustion of administrative remedies bars the Carriers' claim for tortious interference so long as the claim is based on allegations that the Department had

---

[6] Relevant to the issues discussed below, the Department additionally argued in its motion to dismiss that the Tax Injunction Act, 28 U.S.C. § 1341, and the comity principle bar the section 1983 claim, and that the exclusive remedy provision of the ESA bars the tortious interference claim, if not all tort claims.

improper motives or used improper means in imposing its assessments. Fourth, the Carriers state a claim for tortious interference with contracts and business expectancies.

The Department and its current and former employees then filed a petition for review in this court, which we granted. *Wash. Trucking Ass'ns v. Emp't Sec. Dep't,* 186 Wn.2d 1016, 380 P.3d 522 (2016).

ANALYSIS

We review CR 12(b)(6) and CR 12(c) dismissals de novo. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.,* 180 Wn.2d 954, 962, 331 P.3d 29 (2014); *P.E. Sys., LLC v. CPI Corp.,* 176 Wn.2d 198, 203, 289 P.3d 638 (2012). "We treat a CR 12(c) motion . . . identically to a CR 12(b)(6) motion." *P.E. Sys.,* 176 Wn.2d at 203. Dismissal under either subsection is "appropriate only when it appears beyond doubt" that the plaintiff cannot prove any set of facts that "would justify recovery." *San Juan County v. No New Gas Tax,* 160 Wn.2d 141, 164, 157 P.3d 831 (2007); *P.E. Sys.,* 176 Wn.2d at 210. On review, we presume the truth of the allegations and may consider hypothetical facts not included in the record. *FutureSelect,* 180 Wn.2d at 962; *P.E. Sys.,* 176 Wn.2d at 211.[7]

---

[7] In addition to the complaint allegations, WTA and the Carriers submitted to the superior court a 23-page set of "hypothetical facts" that the superior court could rely on in considering the Department's motion. CP at 478-502.

The superior court dismissed WTA's and the Carriers' section 1983 and tortious interference claims because they failed to follow the procedures provided under the ESA and the Administrative Procedure Act (APA), chapter 34.05 RCW. We must decide whether these claims belong in court, and if so, whether they have merit. We discuss each claim in turn.

I.      WTA's and the Carriers' Section 1983 Claim Is Barred under the Comity Principle

WTA and the Carriers assert a section 1983 claim against Department employees in their individual capacities,[8] arguing that the Department employees violated the Carriers' constitutional rights when they targeted the trucking industry and performed audits that were designed to find an employment relationship and tax liability. CP at 221-22, 224. The Department contends that the comity principle bars this federal law claim because the state law process for challenging tax assessments is adequate. Suppl. Br. of Emp't Sec. Dep't at 4-5 (hereinafter Pet'rs' Suppl. Br.). WTA and the Carriers respond that the comity principle does not apply here, and even if it does apply their claim survives because the state law process is inadequate. Wash. Supreme Court oral argument, *Wash. Trucking Assocs. v. State*, No. 93079-1 (Jan. 19, 2017), at 25 min., 10 sec. through 26 min., 26 sec., *recording*

---

[8] Section 1983 does not permit claims against the State or its officials acting in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

*by* TVW, Washington State's Public Affairs Network, http://www.tvw.org; *see also* Resp'ts' Answer to WSAMA[9] Amicus Br. at 12-15. We believe the Department has the better argument. In holding that comity bars the section 1983 claim, we consider in what contexts comity applies, how to measure the adequacy of a state law remedy, and what remedy is provided under Washington law.[10]

> a. Comity Bars State Courts from Awarding Damages under Section 1983 in State Tax Cases When State Law Provides an Adequate Remedy

In general, "the notion of 'comity'" refers to the federal government's "proper respect for state functions." *Younger v. Harris,* 401 U.S. 37, 44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Comity carries "'peculiar force' in suits challenging the constitutionality of state" taxes because of "the important and sensitive nature of state tax systems." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 108, 102, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981) (citation omitted) (quoting *Matthews v. Rodgers,* 284 U.S. 521, 525, 52 S. Ct. 217, 76 L. Ed. 447 (1932)). Indeed, as a matter of federalism "Congress and [the United States Supreme] Court repeatedly have shown an aversion to federal interference with state tax administration." *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,* 515 U.S.

---

[9] Washington State Association of Municipal Attorneys.

[10] Because we hold that comity bars any section 1983 claim, we do not address whether WTA has associational standing to assert such a claim on behalf of the Carriers. *See* Resp'ts' Suppl. Br. at 18-20.

582, 586, 115 S. Ct. 2351, 132 L. Ed. 2d 509 (1995). As early as 1871, the Supreme

Court explained

> It is upon taxation that the several States chiefly rely to obtain the means to
> carry on their respective governments, and it is of the utmost importance to
> all of them that the modes adopted to enforce the taxes levied should be
> interfered with as little as possible. Any delay in the proceedings of the
> officers, upon whom the duty is devolved of collecting the taxes, may
> derange the operations of government, and thereby cause serious detriment
> to the public.

*Dows v. City of Chicago*, 78 U.S. (11 Wall.) 108, 110, 20 L. Ed. 65 (1871).

This "federal-court restraint in state tax matters was [originally] based upon

the traditional doctrine that courts of equity will stay their hand when remedies at

law are plain, adequate, and complete." *Fair Assessment*, 454 U.S. at 108 (citing

*Matthews*, 284 U.S. 521). However, "Congress also recognized that the autonomy

and fiscal stability of the States survive best when state tax systems are not subject

to scrutiny in federal courts." *Id.* at 102-03. In 1937, Congress enacted the Tax

Injunction Act (TIA), 28 U.S.C. § 1341, which states, "The district courts shall not

enjoin, suspend or restrain the assessment, levy or collection of any tax under State

law where a plain, speedy and efficient remedy may be had in the courts of such

State." Essentially, the TIA precludes federal courts from awarding injunctive relief

in state tax cases when state law provides an adequate remedy. *See Fair Assessment*, 454 U.S. at 105.[11]

Although the TIA was intended to limit only federal court jurisdiction, "the principle of comity which predated the [TIA] was not restricted by its passage." *Id.* at 110; *see also Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 430, 130 S. Ct. 2323, 176 L. Ed. 2d 1131 (2010) (the Supreme Court has not "recast the comity doctrine"). This is because the TIA is "but a partial codification of the federal reluctance to interfere with state taxation." *Nat'l Private Truck*, 515 U.S. at 590; *see also California v. Grace Brethren Church*, 457 U.S. 393, 412, 102 S. Ct. 2498, 73 L. Ed. 2d 93 (1982) (the "historical reluctance" of the federal government to interfere with state taxation existed "long before enactment of the [TIA]"); *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 525 n.33, 101 S. Ct. 1221, 67 L. Ed. 2d 464 (1981) ("And even where the [TIA] would not bar federal-court interference in state tax administration, principles of federal equity may nevertheless counsel the withholding of relief."). The Supreme Court has thus continued to rely on the comity principle, finding that it precludes federal courts from issuing declaratory judgments

---

[11] The Supreme Court has interpreted the TIA to also bar federal courts from issuing declaratory judgments in state tax cases if a "plain, speedy and efficient" remedy exists. *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S. Ct. 2498, 73 L. Ed. 2d 93 (1982).

in state tax cases when an adequate state law remedy exists. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 295, 301, 63 S. Ct. 1070, 87 L. Ed. 1407 (1943).

The Supreme Court has relied on the comity principle in two key cases involving section 1983 challenges to state taxes. In *Fair Assessment*, the Supreme Court identified "two divergent lines of authority respecting access to federal courts for adjudication of the constitutionality of state laws." 454 U.S. at 105. While comity generally bars federal courts from awarding relief in state tax cases, section 1983 generally permits relief. *See id.* The plaintiffs in *Fair Assessment* brought a section 1983 action in federal court, seeking a refund and punitive damages for allegedly unequal taxation of their real property. *Id.* at 106. Given that awarding damages would "be fully as intrusive as the equitable actions that are barred by principles of comity," the Supreme Court held that the plaintiffs' section 1983 claim was barred. *Id.* at 113, 116. That case thus stands for the rule that comity bars federal courts from awarding damages in section 1983 actions challenging state taxes so long as state law provides an adequate remedy. *Id.* at 116.

In *National Private Truck*, the Supreme Court built on *Fair Assessment* to explain that comity applies with equal force in state courts. There, the plaintiffs brought a section 1983 action in state court seeking a refund, an injunction, a declaratory judgment, and attorney fees for taxes that allegedly violated the

commerce clause. 515 U.S. at 584; CONST art. I, § 8, cl. 3. The Supreme Court held that comity bars state courts from awarding injunctive or declaratory relief in section 1983 challenges to state taxes when state law provides an adequate remedy. *Id.* at 589. This is because an "injunction issued by a state court pursuant to § 1983 is just as disruptive as one entered by a federal court." *Id.* at 591. In so holding, the Supreme Court relied on the "background presumption that federal *law* [as opposed to federal *courts*] generally will not interfere with" state tax administration. *Id.* at 588 (emphasis added).

Taken together, *Fair Assessment* and *National Private Truck* lead to the conclusion that comity restrains state courts from awarding any type of relief in section 1983 actions challenging the validity of state taxes, provided there is an adequate state law remedy.[12] *Fair Assessment* demonstrates that a damages award is just as disruptive of the state tax system as an injunction, while *National Private*

---

[12] The Supreme Court has held that neither the TIA nor the comity principle bars a third party's section 1983 challenge to a tax *credit* received by others. *Hibbs v. Winn,* 542 U.S. 88, 106-08, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004) (invalidation of the tax credit would have "enlarge[d] state receipts," and thus the TIA and comity did not stand as an obstacle to the section 1983 suit). Comity bars only state tax challenges in which a taxpayer seeks to "avoid paying state taxes" because invalidation of a tax impacts the State's revenue raising function. *Id.* at 107.

WTA and the Carriers contend that *Hibbs* limits the comity principle to challenges based on the collection of taxes, not the tax collector's conduct. Wash. Supreme Court oral argument, *supra,* at 20 min., 46 sec. through 21 min., 10 sec. We disagree. *Hibbs* was concerned only with the result—not with the basis—of the section 1983 claim, i.e., the fact that it interfered with state tax collection.

*Truck* demonstrates that a state court injunction is just as disruptive as a federal court injunction. Accordingly, a state court's award of damages is just as disruptive as a federal court's award of damages.[13] This conclusion aligns with comity's underlying purpose, which is to avoid throwing state tax administration "'into disarray,'" allowing taxpayers to "'escape the ordinary procedural requirements imposed by state law,'" or obstructing "'the collection of revenue.'" *Fair Assessment,* 454 U.S. at 108 n.6 (quoting *Perez v. Ledesma,* 401 U.S. 82, 127 n.17, 91 S. Ct. 674, 27 L. Ed. 2d 701 (1971) (Brennan, J., concurring in part and dissenting in part)); *see also Great Lakes,* 319 U.S. at 299 (noting that "in every practical sense [the procedure] operate[s] to suspend collection of the state taxes until the litigation is ended").

Recognizing this purpose, other courts have come to the same conclusion. For example, in *Patel v. City of San Bernardino,* 310 F.3d 1138, 1141 (9th Cir. 2002), the Ninth Circuit stated that "[r]ead together, *Fair Assessment* and *National Private Truck* bar use of § 1983 to litigate state tax disputes in either state or federal court." In *Francis v. City of Columbus,* 267 Neb. 553, 559, 676 N.W.2d 346 (2004), the Nebraska Supreme Court stated that "[a]lthough *Fair Assessment* was limited only

---

[13] Because 42 U.S.C. § 1988 provides for an award of attorney fees under section 1983 to "the prevailing party," comity also bars state courts from awarding attorney fees in state tax cases when an adequate state law remedy exists. 42 U.S.C. § 1988(b); *see also Nat'l Private Truck,* 515 U.S. at 592 ("It follows that when no relief can be awarded pursuant to § 1983, no attorney[] fees can be awarded under § 1988.").

to [section] 1983 claims in federal court, its concerns apply with equal force to [section] 1983 claims brought in state court." Lastly, in *General Motors Corp. v. City of Linden*, 143 N.J. 336, 346, 671 A.2d 560 (1996), the New Jersey Supreme Court posited that in *Fair Assessment*, "the [Supreme] Court focused not on the nature of the relief requested, but on the *possible interference* of any relief in the administration of the state tax system." (Emphasis added.) Given the conclusion that the comity principle applies in this context, we must determine how the adequacy of a state law remedy is to be measured in comity cases.

### b. The Adequacy of a State Law Remedy Turns on Procedural Criteria, Not Whether Substantive Relief Is Available

The Department contends that whether a state law remedy is adequate depends on the procedure it affords. Pet'rs' Suppl. Br. at 5. If constitutional objections can be raised during the state law process, and that process is subject to judicial review, the remedy afforded is adequate and the taxpayer cannot assert a section 1983 claim to obtain additional relief. *Id.* at 9.

Amicus WSAMA supports the Department, contending that "the state remedy is viewed procedurally, not substantively." Suppl. Br. of Amicus Curiae WSAMA in Supp. of State of Wash. at 2. Both the Supreme Court and other state courts have found a state law remedy adequate even where the plaintiff could not recover the

attorney fees and punitive damages under section 1983 in the state law process. Br. of Amicus Curiae WSAMA in Supp. of State of Wash. at 8, 12-14.

WTA and the Carriers respond that a state law remedy is not adequate, and thus comity does not require restraint, if at least one of the taxpayer's claims cannot be substantively addressed in the forum provided under state law. Resp'ts' Answer to Pet. for Review at 11. They insist that the Department and WSAMA misstate the law in arguing that "adequacy" analysis is limited to a review of the procedures available because such an analysis would effectively immunize agencies from liability under section 1983. *Id.*; Resp'ts' Answer to WSAMA Amicus Mem. at 4. This would run contrary to the broad interpretation of section 1983 as a remedial statute. Br. of Appellants at 25 n.19.

The case law regarding both the TIA and the comity principle support the Department's argument. Under the TIA, a state law remedy is adequate if it is "plain, speedy and efficient." 28 U.S.C. § 1341. Under the comity principle, courts "will stay their hand when remedies at law are plain, adequate, and complete." *Fair Assessment*, 454 U.S. at 108. While the Supreme Court has never explicitly held that these inquiries are identical, it has "suggested that adequacy of the state system for comity purposes is the same standard as 'plain, speedy and efficient' under the TIA." *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 125 (1st Cir. 2016).

Although the Supreme Court once stated that "Congress did not equate [the TIA's] 'plain, speedy and efficient' with equity's 'plain, adequate and complete,'" *Rosewell*, 450 U.S. at 526, later that year the Supreme Court treated the terms as synonymous. In *Fair Assessment*, the Supreme Court stated,

> We discern no significant difference . . . between remedies which are 'plain, adequate, and complete,' as that phrase has been used in articulating the doctrine of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of [the TIA]. Both . . . refer to the obvious precept that plaintiffs seeking protection of federal rights in federal courts should be remitted to their state remedies if their federal rights will not thereby be lost.

454 U.S. at 116 n.8 (citations omitted).

In any event, in the same opinion that first rejected equating the terms, the Supreme Court also stated that comity cases are instructive in deciding whether a state remedy is "'plain, speedy and efficient'" under the TIA. *Rosewell*, 450 U.S. at 525 n.33. The Supreme Court's suggestion in *Fair Assessment* that the terms are equivalent, combined with its statement in *Rosewell* that comity cases are instructive in the TIA's adequacy analysis, as well as the fact that the TIA "'has its roots in [federal] equity practice,'" all support the conclusion that the two inquiries are essentially the same. *Id.* at 522 (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S. Ct. 219, 50 L. Ed. 2d 227 (1976)). Even if they are not identical, the comity principle "is more embracive than the TIA" and thus requires restraint in more instances. *Levin*, 560 U.S. at 424; *see also Rosewell*, 450 U.S. at 525 n.33 ("And even where

the [TIA] would not bar federal-court interference in state tax administration, principles of federal equity may nevertheless counsel the withholding of relief.").

Accepting an equivalent adequacy analysis under the TIA and the comity principle, we must consider what the analysis entails. Courts construe the "'plain, speedy and efficient'" exception narrowly. *Grace Brethren*, 457 U.S. at 413. The Department and WSAMA are correct that the focus is on state procedures, not on the substance of specific remedies. The Supreme Court has said that whether a "'plain, speedy and efficient'" remedy exists turns on the procedures afforded under state law. *Id.* at 411; *Rosewell*, 450 U.S. at 512 (a state court remedy must "meet[] certain minimal *procedural* criteria"). The procedures afforded under state law are adequate if they provide "the taxpayer with a 'full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. at 514 (quoting *LaSalle Nat'l Bank v. County of Cook*, 57 Ill. 2d 318, 324, 312 N.E.2d 252 (1974)); *see also Grace Brethren*, 457 U.S. at 414-15 (rejecting taxpayers' claim of inadequate state procedures because injunctive relief was not available in the state system, and emphasizing that the same type of relief need not be available in the state system so long as the taxpayer may raise constitutional claims).[14] "Plain" means the

_____

[14] Other state courts have relied on *Rosewell* and *Grace Brethren* to hold that the adequacy of a state remedy is to be viewed procedurally. *See, e.g., Francis*, 267 Neb. at

procedures in the state law process are certain. *Rosewell*, 450 U.S. at 516-17.

"Efficient" means the process poses "no unusual hardship." *Id.* at 518. "Speedy" is

fact dependent, but the Supreme Court has held that a two-year delay in receiving a

refund is speedy. *Id.* at 521.

Given this case law, we cannot accept WTA's and the Carriers' argument that

state remedies are inadequate where section 1983 or tort claims cannot be

adjudicated in the state forum. It is not enough to say that section 1983 is a remedial

statute that must be construed broadly to allow taxpayers to bring claims based on

constitutional violations. Br. of Appellants at 25 n.19. In the specific context of

state tax cases, the Supreme Court has held that section 1983 must be construed

narrowly. *Nat'l Private Truck*, 515 U.S. at 589.[15]

---

555, 560-61 (state law remedy was adequate, even though it did not allow taxpayers to recover punitive damages or attorney fees, because it provided taxpayers with an opportunity to collect a refund and to raise constitutional objections to the tax); *Gen. Motors*, 143 N.J. at 348 ("A state remedy need not be identical to section 1983 remedies. It need not be the best remedy available, the most convenient remedy, or equal to or comparable with federal remedies." (citations omitted)); *Kerr v. Waddell*, 185 Ariz. 457, 463-64, 916 P.2d 1173 (1996) (same).

[15] WTA and the Carriers rely on *Dennis v. Higgins*, 498 U.S. 439, 111 S. Ct. 865, 112 L. Ed. 2d 969 (1991), stating that there the "Court upheld the availability of § 1983 to vindicate key federal statutory and constitutional rights, even in state court actions." Resp'ts' Suppl. Br. at 7-8 n.5. However, the majority opinion in *Dennis* did not discuss the TIA or the comity principle. That case stands only for the proposition that a commerce clause claim is actionable under section 1983. *See Dennis*, 498 U.S. at 440.

The section 1983 cases on which WTA and the Carriers rely are not helpful. WTA and the Carriers first direct us to *Jones v. State,* 170 Wn.2d 338, 242 P.3d 825 (2010) and *Tarabochia v. Adkins,* 766 F.3d 1115, 1128 (9th Cir. 2014). Resp'ts' Suppl. Br. at 5-7. In *Jones,* this court held that health inspectors could be liable under section 1983 for wrongfully fabricating evidence to suspend a pharmacist's license without a predeprivation hearing. 170 Wn.2d at 352. In *Tarabochia,* the Ninth Circuit held that the plaintiffs' Fourth Amendment rights were violated in a warrantless stop and the officers that performed the stop were not entitled to qualified immunity under section 1983. 766 F.3d at 1125. Neither of these cases concerned state taxes or the comity principle, and they are therefore off point.

Next, WTA and the Carriers rely on *Carrier Corp. v. Perez,* 677 F.2d 162 (1st Cir. 1982), *Hillsborough v. Cromwell,* 326 U.S. 620, 66 S. Ct. 445, 90 L. Ed. 358 (1946), *Patel v. City of San Bernardino,* 310 F.3d 1138 (9th Cir. 2002), and *Johnson v. City of* Seattle, 184 Wn. App. 8, 335 P.3d 1027 (2014). Resp'ts' Suppl. Br. at 8-11. None of these cases advances their cause. In *Carrier Corp.,* the First Circuit held that the Butler Act, 48 U.S.C. § 872—Puerto Rico's equivalent of the TIA— barred a corporation's Commerce Clause claim because it could pursue that claim in the Puerto Rico courts. 677 F.2d at 164. The court explained that "[t]he Butler Act, at most, requires assurance that a plaintiff will have an opportunity to make an

argument in state court, not that he will win." *Id.* at 165. *Carrier Corp.* thus demonstrates only that the adequacy of a remedy depends on the taxpayer's ability to raise constitutional claims in the state law process, a point which favors the Department's argument.

In *Hillsborough*, the Supreme Court held that the state law remedy was inadequate because "the state board of tax appeals . . . ha[d] no right to pass on constitutional questions" and any subsequent state court review was "purely discretionary." 326 U.S. at 625-26. *Hillsborough* demonstrates that a taxpayer must have the opportunity to raise constitutional objections to taxation at some point in the state court process. This simply confirms that state law remedies are to be viewed procedurally, as the Supreme Court confirmed in *Rosewell* and *Grace Brethren*.

In *Patel*, the Ninth Circuit allowed taxpayers to pursue a section 1983 claim for damages when the city continued to collect a tax after the state court had declared it unconstitutional. 310 F.3d at 1139-40, 1142. The Ninth Circuit explained that *Fair Assessment* did not control because the taxpayers were "not seeking to challenge the validity of a tax, but merely to obtain retrospective damages for a tax that ha[d] already been declared invalid in state court." *Id.* at 1140. While it is true that *Patel* shows the TIA and comity are not absolute bars to section 1983 claims in

tax cases, it does not apply here because this case does not concern the collection of a tax that has been adjudged unconstitutional or invalid. Rather, as the Department correctly notes, the ALJ merely remanded with instructions to the Department to reassess certain aspects of the taxes. Pet'rs' Suppl. Br. at 11; CP at 299-301, 303-04 (remanding and placing the burden on the Carriers to produce evidence justifying reconsideration).[16]

In *Johnson*, the Court of Appeals reversed the dismissal of the plaintiff's section 1983 suit because the city's ordinance scheme did not allow the plaintiff to present evidence of his nonconforming use as a defense to parking citations. 184 Wn. App. at 11. *Johnson* involved neither state taxing authority nor the comity principle, and is therefore unhelpful.

WTA and the Carriers further rely on *Wal-Mart Puerto Rico*. Resp'ts' Suppl. Br. at 11-12. There the First Circuit held that neither comity nor the Butler Act barred the taxpayer's section 1983 claim because Puerto Rico had passed legislation based on "dire financial straits" setting a cap on the amount of tax refunds, and its prioritization of other government obligations rendered any refund uncollectable.

---

[16] WTA and the Carriers also rely on *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 24, 829 P.2d 765 (1992). Resp'ts Suppl. Br. at 10. In *Sintra*, this court allowed a developer to pursue its section 1983 claim against the city after the city continued to enforce a tax that had been declared invalid in a separate case. 119 Wn.2d at 8. Given the similarities between *Patel* and *Sintra*, the latter case is no more helpful than the former.

*Wal-Mart Puerto Rico*, 834 F.3d at 112, 121. The holding in *Wal-Mart Puerto Rico* is limited to the unusual facts of the case. Should the Carriers be entitled to a refund in this case, nothing suggests they could not collect it, as counsel for the Carriers conceded at oral argument. Wash. Supreme Court oral argument, *supra*, at 29 min., 28 sec. through 29 min., 43 sec.

Lastly, WTA and the Carriers look to the cases the Department cites, including *Francis*, *General Motors*, *Grace Brethren*, and *Rosewell*. Resp'ts' Suppl. Br. at 12 n.8. WTA and the Carriers argue that in these cases the "'adequate remedy' could at least address, on the merits, the allegation that the plaintiffs' federal rights had been violated." *Id.* To the extent they argue the difference is that an *administrative tribunal* could adjudicate the federal constitutional claims, they are mistaken. In both *Francis* and *Grace Brethren*, it appears that the constitutional objections could be raised only in the superior court. *See Francis*, 267 Neb. at 560 ("[U]nder [Neb. Rev. Stat.] § 16-637, a taxpayer can . . . bring[] suit . . . and . . . a claim that a special tax assessment violates the federal Constitution can be raised and adjudicated in § 16-637 claims."); *Grace Brethren*, 457 U.S. at 413 n.30 ("Apparently, California taxpayers cannot raise their constitutional challenges in the administrative tax refund proceeding unless an appellate court already has sustained such a challenge."). In any event, adequacy depends on the taxpayer's ability to raise constitutional

objections at some point in the state law process—whether in the administrative tribunal *or* on judicial review. *See Grace Brethren*, 457 U.S. at 414 ("Nothing in this scheme prevents the taxpayer from 'rais[ing] any and all constitutional objections to the tax' in the *state courts*." (emphasis added) (alteration in original) (quoting *Rosewell*, 450 U.S. at 514)).

Similarly, WTA and the Carriers are mistaken to the extent they argue that the specific claims they seek to raise must be adjudicated in the state law process. As established above, taxpayers need only be provided the opportunity to raise constitutional objections—not a specific claim, such as one under section 1983. Section 1983 claims are available only in special circumstances, such as when a taxing agency continues to impose a tax after a state court has declared the tax unconstitutional. *See Nat'l Private Truck*, 515 U.S. at 591 n.6 ("[T]here may be extraordinary circumstances under which injunctive or declaratory relief is available even when a legal remedy exists. . . . [I]f a state court awards a refund to a taxpayer on the ground that the tax violates the Federal Constitution, but state tax authorities continue to impose the unconstitutional tax, injunctive and declaratory relief might then be appropriate. In such circumstances, the remedy might be thought to be 'inadequate.'"); *see also Patel*, 310 F.3d at 1142 & n.4 (allowing plaintiffs to pursue their section 1983 claim for damages against state tax officials because "[a] tax

declared unconstitutional cannot continue to be collected"). Though these special circumstances are not present here, they demonstrate that the comity principle does not render agencies such as the Department wholly immune from section 1983 liability, as WTA and the Carriers argue. They also demonstrate that there is a substantive aspect to state forum adequacy under *Fair Assessment* and *National Private Truck* because a state remedy will not be found adequate unless it affords monetary relief from the collection of an unconstitutional tax. *See Wal-Mart P.R.*, 834 F.3d at 121 (recognizing that adequacy analysis cannot render the word "remedy" meaningless); *see also Patel*, 310 F.3d at 1142.

In sum, precedent does not support WTA's and the Carriers' proposition that the adequacy of a remedy depends on whether the state tribunal can address the merits of the taxpayer's particular claims. Rather, the cited cases are either irrelevant to the issue in this case or they demonstrate merely that a remedy is not adequate if it is uncertain. Having determined that the adequacy of the state process turns on procedural criteria, we must consider the adequacy of the remedy available to the Carriers here under Washington law.

c. The Remedy Provided under Washington Law Is Adequate Because It Affords the Carriers an Opportunity To Raise Constitutional Objections to Tax Assessments on Judicial Review

The Department contends that the state law remedy in this case is adequate because the Supreme Court has found tax refunds, the same remedy available here, to be adequate in other cases, and constitutional objections to the taxes assessed can be made in an APA appeal. Pet'rs' Suppl. Br. at 6, 8. WTA and the Carriers counter that the administrative process provides only for a refund in the amount of the unemployment tax assessed. Resp'ts' Answer to Pet. for Review at 9. Because a refund would not redress the Department's violation of the Carriers' section 1983 rights, the state law remedy is not adequate and comity does not bar the claim. *Id.*[17]

As discussed above, the Department correctly articulates how we must measure the adequacy of a state law remedy in comity cases. Accordingly, in

---

[17] WTA and the Carriers also assert that the remedy is not adequate because the ALJ in other administrative appeals excluded evidence regarding the auditing process, and there is therefore "very limited or no meaningful [opportunity] to create a record" to address the Department's violations of the Carriers' constitutional rights. Br. of Appellants at 41. Indeed, they contend that "an APA appeal is limited to the agency record." *Id.* at 22. They are mistaken. On judicial review, the court can consider evidence not contained in the agency record that "relates to the validity of the agency action." RCW 34.05.562(1). Our holding is therefore not affected by the fact that the ALJ excluded testimony regarding the auditing process in other administrative appeals, CP at 631-32, and the fact that the Department moved to exclude testimony in this case because the "issue is whether the assessment is correct, not how the agency made the assessment," *id.* at 560. Even if these rulings were error, they do not render our state forum inadequate, since they do not limit the claims the Carriers can raise on appeal or the relief available if those claims succeed.

determining whether the state law remedy in this case is adequate, we examine the procedure for challenging a tax assessment (and obtaining a refund when that challenge succeeds) under Washington law.

Upon finding an employer has failed to pay unemployment taxes, the Department issues an "order and notice of assessment specifying the amount due." RCW 50.24.070. Chapter 50.32 RCW of the ESA provides for an administrative appeal of such an assessment. RCW 50.32.030. An aggrieved employer may request a hearing by an ALJ. RCW 50.32.010, .030, .050. Collection of taxes, penalties, and interest is stayed on administrative appeal, and only on judicial review must sums due be paid to the commissioner or into the registry of the court. RCW 50.32.030, .130. Parties may engage in discovery, introduce evidence, present testimony, and examine witnesses. RCW 34.05.446(3), .449; WAC 192-04-110, -130. After hearing, the ALJ will issue an initial order affirming, modifying, or setting aside the assessment. RCW 50.32.050. The Department's commissioner may review the ALJ's ruling sua sponte or upon petition of any interested party. RCW 50.32.070, .080. Judicial review of the commissioner's decision is available under the APA. RCW 34.05.510; RCW 50.32.120. Absent such review, the commissioner's decision becomes final. RCW 50.32.090. On judicial review, a court may affirm, set aside, modify, or remand the matter if the agency's order "is

in violation of constitutional provisions on its face or as applied." RCW 34.05.570(3)(a), .574(1); *see, e.g., Dot Foods, Inc. v. Dep't of Revenue*, 185 Wn.2d 239, 244-45, 372 P.3d 747 (2016) (retroactive application of business and occupation tax amendment did not violate taxpayer's due process rights); *Tiffany Family Tr. Corp. v. City of Kent*, 155 Wn.2d 225, 227-28, 119 P.3d 325 (2005) (rejecting property owner's allegation that local improvement district assessment was an unconstitutional taking and violated due process because it "failed to use the mandatory statutory procedure for challenging" such assessments).

Because the Supreme Court has held that the ability to seek a tax refund is an adequate remedy, and because the Carriers may raise any constitutional claims on judicial review, Washington law provides an adequate remedy. In both *Rosewell* and *Grace Brethren*, the Supreme Court held that a refund was an adequate remedy even though interest and injunctive relief were not available in the state system. *See Rosewell*, 450 U.S. at 515 (interest); *Grace Brethren*, 457 U.S. at 415 (injunctive relief). In *Fair Assessment* and *National Private Truck*, the Supreme Court also suggested that a refund may be adequate despite the taxpayer's inability to recover punitive damages or attorney fees in the state process. *See Fair Assessment*, 454 U.S. at 106, 116 (punitive damages); *Nat'l Private Truck*, 515 U.S. at 592 (attorney

fees). While adequacy was not directly at issue in either of those cases,[18] the Supreme Court's analysis nonetheless confirms that a remedy is adequate even when "no relief can be awarded pursuant to § 1983." *Nat'l Private Truck,* 515 U.S. at 592.

Further, the APA provides that the Carriers may raise constitutional objections upon judicial review, and thus the state law remedy "meets certain minimal *procedural* criteria." *Rosewell,* 450 U.S. at 512. Although it is unclear whether the ALJ or the commissioner may pass on the constitutionality of taxes,[19] the taxpayer is not prohibited from asserting constitutional claims. *See Grace Brethren,* 457 U.S. at 414; *cf. Hillsborough,* 326 U.S. at 624-26. Accordingly, the section 1983 claim is barred under the comity principle.

II.    The Exclusive Remedy Provision of the ESA Bars the Carriers' Tortious Interference Claim

Independent of their section 1983 claim, the Carriers assert a claim for tortious interference. Because this is a state common law claim, the comity principle does not apply. However, as with the comity principle, the ESA restrains interference

---

[18] In *Fair Assessment,* the district court concluded that the remedy was adequate and the plaintiffs did not appeal that finding. 454 U.S. at 116. In *National Private Truck,* the plaintiffs conceded that the remedy was adequate. 515 U.S. at 589.

[19] At oral argument, counsel for the Department explained that ALJs have limited power to review constitutional claims, but that such issues may be preserved for appeal. Wash. Supreme Court oral argument, *supra,* at 10 min., 5 sec. through 10 min., 30 sec.

with state taxation and it provides that taxpayer challenges to the "justness or correctness" of unemployment tax assessments must proceed under Title 50 RCW.

The Department maintains that a challenge to an assessment amount is a challenge to its "'correctness,'" while a challenge to the motive or means in assessing the tax is a challenge to its "'justness.'" Pet'rs' Suppl. Br. at 15. Because the Carriers challenge the validity of the assessments and the manner in which the Department conducted the audits, they must bring their challenges under the procedures set out in Title 50 RCW. *Id.* In response, the Carriers contend that the Department should be judicially estopped from arguing that the administrative process can address the "justness" of the assessments given that the Department has repeatedly insisted its motive and means are irrelevant. Resp'ts' Answer to Pet. for Review at 17. We hold that the ESA bars the common law tortious interference claim.

The ESA provides that the remedies under it "for determining the justness or correctness of assessments, refunds, adjustments, or claims shall be exclusive and no court shall entertain any action to enjoin an assessment or require a refund or adjustment except in accordance with the provisions of this title." RCW 50.32.180. The ESA does not define "justness," nor are there any cases or legislative history interpreting its meaning. An undefined statutory term should be given its "'usual

and ordinary meaning.'" *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005) (quoting *State v. Hahn*, 83 Wn. App. 825, 832, 924 P.2d 392 (1996)). "If the undefined statutory term is not technical, the court may refer to the dictionary to establish the meaning of the word." *Id.* at 423. Under the common meaning, "just" is synonymous with "fair," "equitable," "impartial," "unbiased," "dispassionate," or "objective." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 979, 655 (3d ed. 1992) (synonyms of "just" cross-referenced under "fair"); WILLIAM C. BURTON, LEGAL THESAURUS 305-06 (2d ed. 1992). Given that the Carriers challenge the Department's motive and means in conducting the audits, they arguably challenge the unfairness, and thus the "justness," of the assessments. *See* Br. of Appellants at 35 (describing the Department's improper motive as restructuring the trucking industry, and its improper means as disregarding its own auditing standards). By its plain terms, the ESA therefore bars the Carriers' tortious interference claim.

III.    WTA and the Carriers Are Not Entitled to Attorney Fees

WTA and the Carriers request attorney fees pursuant to RAP 18.1 and section 1988. Resp'ts' Suppl. Br. at 20. Section 1988 provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

42 U.S.C. § 1988(b). Because comity bars WTA and the Carriers' section 1983 claim, there is no basis for an award of attorney fees.

CONCLUSION

We reverse the Court of Appeals and uphold the superior court's order of dismissal. The comity principle bars state courts from awarding damages under section 1983 in state tax cases when there is an adequate state law remedy. The adequacy analysis is the same for purposes of the TIA and comity. This holding is in line with the underlying purpose of comity—avoiding disruption of state tax administration to ensure the State can collect the revenue it depends on to function. Applying the adequacy analysis here, comity bars WTA's and the Carriers' section 1983 claim because they may raise constitutional objections to the tax on judicial review.

The ESA precludes the Carriers' state common law claim for tortious interference with business expectancies. This claim plainly challenges the "justness or correctness" of the unemployment tax assessments, requiring the Carriers to rely exclusively on the procedures set out in Title 50 RCW.

*Stephens, J.*

WE CONCUR:

*Fairhurst, C.J.*

*Wiggins, J.*

*Johnson, J.*

*González, J.*

*Madsen, J.*

*Gordon McCloud, J.*

*Owens, J.*

*Yu, J.*